965 F.2d 1411
 Fed. Sec. L. Rep. P 96,633
The ROOTS PARTNERSHIP, individually and on behalf of all
others similarly situated, Plaintiff-Appellant,
v.
LANDS' END, INC., Gary C. Comer, Richard C. Anderson, Paul
C. Kramer, and David L. Schlotterback, Defendants-Appellees.
 No. 91-1927.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 17, 1991.
Decided April 29, 1992.
As Amended April 29, 1992.
As Amended on Denial of Rehearing
and Rehearing In Banc June 12, 1992.
 
 1
 Marvin A. Miller, Patrick E. Cafferty, Chertow & Miller, Chicago, David B. Zlotnick, Susan Schneider Thomas (argued), Zlotnick & Thomas, Bala Cynwyd, Pa., for plaintiff-appellant.
 
 
 2
 Garrett B. Johnson (argued), Jeffrey A. Hall, Jeffrey L. Willian, Kirkland & Ellis, Chicago, Ill., for defendants-appellees.
 
 
 3
 Before CUDAHY and MANION, Circuit Judges, and REYNOLDS, Senior District Judge.*
 
 
 4
 REYNOLDS, Senior District Judge.
 
 
 5
 This case requires us to address first whether an issuer's forward-looking statements of its financial goals fall within SEC Rule 175, 17 C.F.R. § 230.175 (1991), one of the "safe harbors" established by the SEC on the authority of the Securities Act of 1933, Title 15 United States Code § 77s(a); second, whether an issuer's inaccurate prediction of financial performance gives rise to a viable fraud-on-the-market claim under § 10(b) of the Securities Exchange Act, when the issuer's failure to achieve the predicted performance was already public knowledge prior to the plaintiff's purchase; third, whether an issuer's misstatement of its historical performance gives rise to a viable fraud-on-the-market claim when the company's actual historical performance was already public information at the time the misstatement was made; and fourth, whether a securities fraud claim may be based upon statements made by an issuer following the plaintiff's purchase. We conclude that none of these sets of circumstances gives rise to a § 10(b) claim, and accordingly we affirm the district court's dismissal of plaintiff-appellant's amended complaint.PROCEDURAL BACKGROUND
 
 
 6
 Defendant-appellee Lands' End, Inc. ("Lands' End") is a publicly held company headquartered in Dodgeville, Wisconsin, whose stock is traded on the New York Stock Exchange. During periods relevant to this action, defendant-appellee Gary Comer ("Comer") was Chairman and CEO of Lands' End, and defendants-appellees Richard Anderson, Paul Kramer, and David Schlotterback were senior officers of the company.
 
 
 7
 Plaintiff-appellant The Roots Partnership ("Roots") is a Missouri partnership which purchased 20 shares of Lands' End common stock on July 25, 1989.
 
 
 8
 In March 1990, Roots filed this action, purporting to represent a class of persons who purchased Lands' End common stock during the period from March 7, 1989, through December 11, 1989. Roots alleges that during this period Lands' End and the named Lands' End officers made several materially false and misleading statements that artificially inflated Lands' End's stock price. Roots does not allege that it actually relied upon the alleged misstatements but rather proceeds under a fraud-on-the-market theory.
 
 
 9
 On March 25, 1991, without reaching Roots' motion for class certification, the district court dismissed Roots' federal claims with prejudice on the ground that the amended complaint failed to state a viable claim under §§ 10(b) and 20 of the Securities Exchange Act of 1934.[1] The district court also dismissed Roots' pendent state claims without prejudice for lack of subject matter jurisdiction. On April 22, 1991, Roots filed the instant appeal.
 
 FACTS[2]
 
 10
 Lands' End is primarily a catalog merchandiser of clothing, accessories, and domestic goods. During the late 1980's Lands' End established itself as a leading competitor in its field and enjoyed rapid growth in its net sales revenue and net income. The company received favorable publicity for its growth, and by early 1989 the company's common stock rose to over $30 per share. The amended complaint alleges that from March 7, 1989, through December 11, 1989, defendants-appellees made several different materially false and misleading statements. Roots alleges this roughly nine-month span as its putative class period.
 
 A. Roots' Pre-Purchase Allegations
 
 11
 On March 7, 1989, Lands' End announced its results for fiscal 1989 (ending January 31, 1989), reporting sales of $455 million and net income of $32 million, or $1.61 per share.
 
 
 12
 On April 4, 1989, Lands' End publicly predicted that its earnings for the first quarter of fiscal 1990, ending April 30, 1989, would be approximately 8-9% of net sales and lower than prior year results. The company also stated that these results were aberrational and that it historically achieved 60% of its sales and 70-75% of its profits in the second half of the year, which half includes the Christmas season. The April 4th statement was accurate with respect to historical net sales, but was partially inaccurate with respect to historical net profits: during fiscal years ending in January 1986 through January 1989, Lands' End's second-half earnings accounted for 73%, 72%, 67%, and 68%, respectively, of its full-year earnings. In an April 4, 1989 press release, Comer added that Lands' End's "goal" for fiscal 1990 was still to earn 10% net pretax profits on a 15-20% increase in net sales. As of April 30, 1989, Lands' End's internal projection for fiscal 1990 pretax income as a percentage of sales was 9.9%, .1% less than the company's stated goal.
 
 
 13
 On May 1, 1989, Lands' End filed its 1989 Form 10-K and Annual Report with the SEC. The Annual Report stated, in part, that: (1) fiscal 1989 net sales were $456 million, up 35% for the year and double that of fiscal 1986; (2) net income was $32.3 million, up 42% from 1988 and nearly triple that of 1986; (3) Lands' End's "goal" was to "increase the size of [its] business by an average of 15-20% per year[,]" which rate the company had exceeded in the recent preceding years, and (4) Lands' End's "long-term goal" was to double its sales over a five-year period (Am.Compl. pp 30, 31).
 
 
 14
 On May 18, 1989, Lands' End announced its actual first quarter results. In the accompanying press release, Comer stated that in the "long-term" he was "confident" that Lands' End "should meet [its] minimum goal of doubling sales in the [following] five-year period ... and that [Lands' End] can achieve a minimum 10 percent pretax return on sales in the process" (Am.Compl. p 33(c)). Comer cautioned, however, that "until we begin to see results from the critical Christmas season, I'm not sure how [fiscal year 1990] will end up" (Id.).
 
 
 15
 On May 20, 1989, at Lands' End's annual meeting, Comer again cautioned that Lands' End could not predict its Christmas sales, but he reiterated that the company's "purpose is to live up to [its] goal ... to double sales in the five-year period ahead and to produce a 10% net before-tax profit" (Id. p 33(d)).
 
 
 16
 As of June 15, 1989, Lands' End internally projected that its fiscal 1990 pretax income would be 9.6% of net sales, a figure only .4% less than its long-term earnings goal.
 
 
 17
 In a June 19, 1989 letter included in a First Quarter Report to shareholders, Comer essentially repeated his May 20th statement to the effect that Lands' End's goal was to double sales in the upcoming five-year period and to earn a 10% net pretax profit. He also "reiterated that the [c]ompany could not predict what its performance would be in the critical Christmas season...." (Id. p 33(e)).
 
 
 18
 On June 27, 1989, a Lands' End executive vice-president stated at an investor conference that despite Lands' End's "slow start," the company's "long-term goals remain unchanged--to increase sales an average of 15-20% annually and maintain a minimum pretax return of 10% on those sales" (Id. p 33(f)). As of June 27, 1989, Lands' End's internal projection for its fiscal 1990 pretax income was 9.38%.
 
 
 19
 On July 25, 1989, Roots purchased 20 shares of Lands' End common stock.
 
 B. Roots' Post-Purchase Allegations
 
 20
 Lands' End representatives made other allegedly false and misleading statements following Roots' July 25th stock purchase. For example, in a letter to shareholders dated August 28, 1989, Comer acknowledged the company's poor first-half performance, but stated "in the context of what we are trying to accomplish and in line with our long-term goals, we are not too disappointed. In fact, I believe the course we're on is correct" (Id. p 33(h)).
 
 
 21
 The putative class terminates on December 11, 1989, on which date Lands' End announced that its fiscal 1990 earnings were likely to fall 13% from the prior year and that its net pretax profit as a percentage of net sales might prove as low as 8.3%. The company also announced that it expected only a 4% increase in sales during the Christmas season, a figure below previous expectations. Following the December 11 announcement, Lands' End stock dropped until it fell to $18 per share, roughly one-half of the level it had traded nine months earlier.
 
 ANALYSIS
 
 22
 Roots' amended complaint contains two federal securities claims. First, Roots contends that the defendants violated § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5[3] by issuing false and misleading public reports and statements concerning Lands' End's profit goals, expected profits, and historical profits in order to inflate the price of Lands' End common stock. Roots premises this claim upon a fraud-on-the-market theory, asserting that the defendants' fraudulent statements artificially inflated the market price of Lands' End's common stock and that Roots suffered injury by purchasing the stock at such an inflated price (which later dropped when the truth became known to the market).[4] Second, Roots claims that the individual defendants exercised power as "control persons" to cause Lands' End to engage in illegal practices in violation of § 20 of the Securities Exchange Act. Roots' § 20 claim is thus derivative of the § 10(b) claim.
 
 
 23
 The district court dismissed Roots federal claims because: (1) Roots failed to allege facts indicating that Lands' End did not reasonably believe that it could achieve its publicly-stated financial goals, (2) defendants' April 4, 1989 misstatements regarding Lands' End's historical profit margins and inaccurate prediction of expected first quarter profits were immaterial as a matter of law, and (3) Roots failed to allege facts indicating that Lands' End bore a duty to disclose the allegedly omitted material facts.
 
 
 24
 We review the grant of a motion to dismiss de novo. Rothner v. City of Chicago, 929 F.2d 297, 302 (7th Cir.1991). In conducting this review, we must accept as true all well-pleaded factual allegations, and construe such allegations in favor of the plaintiff. Janowsky v. United States, 913 F.2d 393, 395 (7th Cir.1990). Dismissal of the complaint is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), as where a complaint fails to allege an essential element of plaintiff's claim. See Cannon v. Univ. of Chicago, 648 F.2d 1104, 1110 (7th Cir.), cert. denied, 454 U.S. 1128, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981). We are not required, however, to ignore any facts alleged in the complaint that undermine the plaintiff's claim. Gray v. County of Dane, 854 F.2d 179, 182 (7th Cir.1988).
 
 
 25
 In reviewing the district court's dismissal, we address defendants' statements and omissions within the following categories: (1) statements of Lands' End's ten percent (10%) profit goal made prior to Roots' purchase ("pre-purchase statements"), (2) Lands' End's April 4, 1989 ("April 4th") prediction of earnings for the first quarter of fiscal year 1990, (3) Lands' End's April 4th misstatement of its historical financial performance, and (4) Lands' End's statements following Roots' purchase of Lands' End stock ("post-purchase statements").
 
 
 26
 I. Pre-Purchase Statements of Lands' End's Ten Percent (10%) Profit Goal
 
 
 27
 On several occasions from April 4, 1989 through June 27, 1989, Lands' End publicly stated its "goal" of earning at least ten percent net pretax profits over the upcoming five-year period. Three of these statements were accompanied by cautionary language to the effect that the company's results in fiscal 1990 would depend upon its Christmas sales. The district court recognized that the statements implied that defendants reasonably believed that Lands' End could achieve its earnings goal in fiscal 1990, but held that the statements were not actionable because Roots had failed to allege facts suggesting that the defendants did not hold such a reasonable belief.
 
 
 28
 Roots contends that the district court applied an incorrect legal standard in determining that defendants' forward-looking statements were not actionable. Roots argues that a reasonable investor could have construed defendants' statements as a "best guess" projection that Lands' End would earn a minimum of ten percent annual pretax profits in each of the upcoming five years, including fiscal 1990. According to Roots, the district court should therefore have examined the statements as "projections of ... financial items" under SEC Rule 175, under which certain types of forward-looking statements are actionable if they are shown to have been "made or reaffirmed without a reasonable basis or ... disclosed other than in good faith." 17 C.F.R. § 230.175(a).
 
 
 29
 Defendants argue that their statements of corporate goals are not actionable under § 10(b) and Rule 10b-5 for two reasons. First, defendants argue that the statements are immaterial as a matter of law because they were merely forward-looking statements of opinion which "bespoke caution." The defendants argue that no reasonable investor would have relied upon their statements because, as statements of goals, the statements were implicitly contingent and because three of the statements had made expressly contingent upon Lands' End's performance during the Christmas season. Second, defendants argue that Rule 175 shields them from 10b-5 liability because Roots has not alleged facts suggesting that the defendants' statements were made without a reasonable basis or other than in good faith.
 
 
 30
 We decline to hold that the defendants' forward-looking statements are immaterial as a matter of law merely because they "bespoke caution."[5] Although defendants' alleged statements were contingent by their very nature, a reasonable investor could have taken them to imply that defendants' had a reasonable basis for stating that Lands' End's earnings goal was attainable in fiscal 1990.
 
 
 31
 Defendants nonetheless are entitled to dismissal under Rule 175, under which rule we have previously examined similar forward-speaking statements. See Wielgos v. Commonwealth Edison Co., 892 F.2d 509 (7th Cir.1989). Rule 175 provides in part:
 
 
 32
 (a) A statement within the coverage of paragraph (b) ... which is made by or on behalf of an issuer ... shall be deemed not to be a fraudulent statement (as defined in paragraph (d) of this section), unless it is shown that such statement was made or reaffirmed without a reasonable basis or was disclosed other than in good faith.
 
 
 33
 (b) This rule applies to the following statements:
 
 
 34
 (1) A forward-looking statement ... made in a document filed with the Commission ... or in an annual report to shareholders[,] ... a statement reaffirming such forward-looking statement subsequent to the date the document was filed or the annual report was made publicly available, or a forward-looking statement made prior to the date the document was filed or the date the annual report was publicly available if such statement is reaffirmed in a filed document....
 
 
 35
 ....
 
 
 36
 (c) For the purpose of this rule the term forward-looking statement shall mean and shall be limited to:
 
 
 37
 (1) A statement containing a projection of revenues, income (loss), earnings (loss) per share, capital expenditures, dividends, capital structure or other financial items;
 
 
 38
 Construed in Roots' favor, defendants' statements project the possible range of Lands' End's earnings and therefore satisfy subsection (c)(1). The statements also satisfy subsection (b)(1), because one of the statements appeared in the 1989 Annual Report which Lands' End filed with the SEC and the other statements either were reaffirmed in the annual report or reaffirmed the statement in the annual report. Defendants' statements thus fall within the Rule 175 safe harbor, unless Roots alleges facts suggesting that the statements were "made or reaffirmed without a reasonable basis or w[ere] disclosed other than in good faith." See Wielgos, 892 F.2d at 513 (plaintiff bears the burden of persuasion on "reasonable basis" and "good faith" issues).
 
 
 39
 Roots seeks an inference that defendants' statements lacked a reasonable basis largely because Lands' End's stated goal of 10% annual earnings diverged slightly from its internal earnings estimates. Such an inference is unreasonable.
 
 
 40
 At the time of Lands' End's first four goal disclosures--April 4, May 1, May 18, and May 20--Lands' End internally estimated that its fiscal 1990 net pretax profits would be 9.9%--.1% less than Lands' End's goal. When the June 19th and June 27th disclosures were made, the company's internal profit estimates for fiscal 1990 were 9.6% and 9.38%, respectively. These simple differences between the company's stated earnings goal and its internal earnings estimates do not alone suggest that the defendants' statements lacked a reasonable basis. On the allegations in its amended complaint, Roots is entitled only to an inference that the defendants' statements implied that the earnings goals were within Lands' End's reach. We cannot plausibly read the statements as reflecting defendants' "best guess" of what the company would earn in fiscal 1991, given that the statements were phrased in terms of goals and contained express cautionary language regarding the uncertainty of critical Christmas sales. See Acme Propane, Inc. v. Tenexco, Inc., 844 F.2d 1317, 1324 (7th Cir.1988) (plaintiff is entitled only to the plausible reading of defendant's statement most favorable to plaintiff). Roots alleges no facts suggesting that Lands' End had no reasonable chance of meeting its 10% profit goal at any point prior to Roots' July 25th purchase, even after the company's internal earnings estimate fell to 9.38%. Roots has not alleged, for example, that Lands' End could not have met its earnings goal even with reasonably strong Christmas sales, a factor which Lands' End repeatedly emphasized would affect its fiscal 1990 earnings. The simple allegation that Lands' End's internal earnings estimates deviated slightly from its stated goals does not in itself suggest the goal fell outside the realm of reasonable probability and therefore lacked a reasonable basis.
 
 
 41
 Roots also alleges that defendants' statements lacked a reasonable basis because Land's End was experiencing operational problems of slackening demand, obsolete inventory, low-margin liquidations, and declining profit margins which prevented the company from achieving its earnings goals. Roots argues that once defendants disclosed Lands' End's corporate goals, they had a duty to disclose the above problems to prevent making the goals disclosures misleading. See Panter v. Marshall Field & Co., 646 F.2d 271, 292 (7th Cir.), cert. denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). This argument fails because Roots has failed to plead the omission of these operational problems with sufficient particularity. The amended complaint contains no allegations suggesting that defendants knew or should have known prior to Roots' July 25th stock purchase that these alleged problems were so significant that they jeopardized the possibility of attaining the fiscal 1990 earnings goal. The amended complaint also alleges the existence of these operational problems only in the vaguest terms--Roots alleges, for example, that Lands' End "failed to establish adequate reserves for its excessive and outdated inventory," but nowhere does Roots allege what the company's reserves were or suggest how great the reserves should have been. Roots has thus failed to allege "with particularity," as it must under Fed.R.Civ.P. 9(b), that these operational problems undercut the reasonableness of defendants' statements such that the failure to mention these problems constituted fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990).
 
 
 42
 Roots bore the burden of pleading sufficient facts to call either the "reasonable basis" or the "good faith" issues into question. We have concluded that Roots' allegations on the "reasonable basis" issue were insufficient, and the same analysis persuades us that Roots' allegations about defendants' bad faith were equally deficient. The district court properly dismissed Roots' claim as it related to defendants' pre-purchase statements of earnings goals.
 
 
 43
 II. Lands' End's April 4, 1989 Prediction of Earnings for the First Quarter of Fiscal Year 1990
 
 
 44
 In its April 4, 1989 press release, Lands' End announced that it predicted that it would earn between eight and nine percent net profits in the first quarter of fiscal 1990. Roots acknowledges in its amended complaint, however, that Lands' End disclosed its actual first quarter earnings on May 18, 1989, long before Roots purchased its Lands' End stock on July 25, 1989. Roots has failed to allege "loss causation" with respect to the April 4th prediction, however, because the prediction became obsolete when the company's actual first quarter results were announced, prior to Roots purchase.
 
 
 45
 In Bastian v. Petren Resources Corp., 892 F.2d 680, 683 (7th Cir.), cert. denied, 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990), we held that a plaintiff must allege "loss causation" in order to state a viable Rule 10b-5 claim. The plaintiff must, in other words, allege facts suggesting that "but for the defendant's wrongdoing, the plaintiff would not have incurred the harm of which he complains." Id. at 685. Here, Roots must allege that the April 4th prediction somehow contributed to its losses, because the causation-in-fact requirement applies equally to fraud-on-the-market cases as to direct reliance cases. See Basic, 485 U.S. at 242, 108 S.Ct. at 989. Roots has failed to allege such loss causation, however, because the fraud-on-the-market theory under which Roots proceeds presumes that news is promptly incorporated into stock price. See Wielgos, 892 F.2d at 516. Accordingly, Roots cannot ask us to presume that the market reacted to the allegedly fraudulent prediction but ignored later information of Lands' End's actual earnings results, which information was announced months before plaintiffs purchased. See Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 530 (7th Cir.1985) (dicta) (investor cannot ask court to focus on the lie and to ignore information already available to market and reflected in price of the security). Thus, Roots has failed to allege facts suggesting that the April 4th prediction contributed to its losses.
 
 
 46
 III. Lands' End's False Retrospective Statements About Firm Performance
 
 
 47
 The April 4th press release also noted that Lands' End historically achieved 70 to 75 percent of its profits in the second half of the year. Roots asserts that this statement was materially misleading because the company in fact earned only 67%, 68%, 73%, and 72% of its profits, respectively, during the second halves of the previous four years. We conclude that Lands' End's false retrospective statements were immaterial.
 
 
 48
 To satisfy the materiality requirement of Rule 10b-5 in a fraud-on-the-market case, a plaintiff must allege facts suggesting that the false statement significantly affected the "total mix" of information available to the market. Angelos, 762 F.2d at 529 (dicta) (citing TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). Here, the fraud-on-the-market theory compels the conclusion that the price of Lands' End common stock reflected the company's actual second-half performance over the preceding four years, which information had long been available to the market. See id.; see also Wielgos, 892 F.2d at 518. To presume that the market reflected only Lands' End's erroneous retrospective statement would contradict the efficient-market hypothesis upon which Roots premises this lawsuit by myopically focusing on a lie and ignoring the truthful information already available to the market. Angelos, 762 F.2d at 530. Lands' End's retrospective misstatement must therefore be deemed immaterial, because it did not significantly change the total mix of information available to the market about Lands' End actual historical performance.
 
 IV. Lands' End's Post-Purchase Statements
 
 49
 Roots alleges that defendants made several statements following Roots' July 25th purchase that violate Rule 10b-5. Such post-purchase statements cannot form the basis of Rule 10b-5 liability, because the statements could not have affected the price at which plaintiff actually purchased. See, e.g., Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 755, 95 S.Ct. 1917, 1934, 44 L.Ed.2d 539 (1975) (Rule 10b-5 proscribes only fraud in connection with the purchase or sale of securities). We presume only that the market is efficient, not clairvoyant. Accordingly, dismissal of the claim regarding defendants' post-purchase statements was proper because of Roots' failure to allege loss causation. See Bastian, 892 F.2d at 683.[6]
 
 
 50
 For the above reasons, the district court's dismissal of appellant's amended complaint is AFFIRMED.
 
 ORDER
 
 51
 June 12, 1992.
 
 
 52
 This matter comes before the court for its consideration of the following document:
 
 
 53
 "PLAINTIFF-APPELLANT'S PETITION FOR REHEARING OR, IN THE ALTERNATIVE, REHEARING IN BANC" filed herein on May 13, 1992.
 
 
 54
 On consideration of the plaintiff-appellant's petition for rehearing or, in the alternative, rehearing in banc, filed in the above-entitled cause, the members of the panel having voted to deny the petition for rehearing and no active judge having requested a vote on the petition for rehearing in banc, accordingly,
 
 
 55
 IT IS ORDERED that the aforesaid petition for rehearing or, in the alternative, rehearing in banc be, and the same is hereby, DENIED.
 
 
 56
 IT IS FURTHER ORDERED that the opinion of this Court issued on April 29, 1992, is amended as follows:
 
 
 57
 The first full paragraph at page 1419 should read as follows:
 
 
 
 *
 The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation
 
 
 [1]
 The district court dismissed Roots' federal claims with prejudice, because the court had earlier permitted Roots to amend its complaint in lieu of responding to a summary judgment motion filed by defendants-appellees
 
 
 [2]
 The following facts are based upon the allegations in Roots' amended complaint, which we accept as true for the purposes of this appeal. Rothner v. City of Chicago, 929 F.2d 297, 302 (7th Cir.1991)
 
 
 [3]
 Rule 10b-5 provides in part:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 ....
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading....
 
 
 [17]
 C.F.R. § 240.10b-5 (1991)
 
 
 [4]
 The Supreme Court has described the fraud-on-the-market theory as follows:
 The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.
 Basic Inc. v. Levinson, 485 U.S. 224, 241-42, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988) (quoting Peil v. Speiser, 806 F.2d 1154, 1160-61 (3d Cir.1986)).
 
 
 [5]
 In support of their argument, defendants cite Luce v. Edelstein, 802 F.2d 49 (2d Cir.1986) and Polin v. Conductron Corp., 552 F.2d 797 (8th Cir.), cert. denied, 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977). In Luce the plaintiff brought Rule 10b-5 claims based upon the defendant partnership's allegedly fraudulent projections of cash and tax benefits. The challenged disclosure stated that the projections were "necessarily speculative," that "no assurance could be given that these projections would be realized," and that "actual results may vary from the predictions." Id. at 56. The district court dismissed the 10b-5 claims and the Second Circuit affirmed, holding that the disclosures were not actionable as a matter of law because they "clearly 'besp[oke] caution.' " Id. In Polin the Eighth Circuit affirmed the district court's post-trial finding that certain forward-looking statements did not violate § 10(b), holding that the statements "besp[oke] caution in outlook and f[e]ll far short of the assurances required for a finding of falsity and fraud." 552 F.2d at 806 n. 28
 Defendants' citation to Polin is unpersuasive, because the Polin court decided the materiality issue on the record and not as a matter of law. We also decline to apply Luce here, because defendants' statements were not immaterial as a matter of law; instead, they implied that defendants had a reasonable basis for stating that Lands' End's earnings goal was attainable.
 
 
 [6]
 Having no claim of its own based on the post-purchase statements, Roots would not be a proper representative of a class of persons who bought Lands' End stock after defendants' allegedly fraudulent post-July 25, 1989 statements. See, e.g., Denny v. Barber, 576 F.2d 465, 468-69 (2d Cir.1978). Roots therefore cannot defeat dismissal by purporting to represent the interests of post-July 25, 1989 purchasers