## In re DISCOVERY ZONE SECURITIES LITIGATION.

### No. 94 C 7089.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 27, 1996.

See also, 1996 WL 549487.

Steven Popuch, Swift, Popuch & Sinclair, Chicago, IL, Michael David Craig, Schiffrin & Craig, Ltd., Buffalo Grove, IL, Mark C. Gardy, Abbey & Ellis, New York City, Robert P. Sugarman, Milberg, Weiss, Bershad, Hynes & Lerach LLP, New York City, Robert M. Roseman, Spector & Roseman, P.C., Philadelphia, PA, for Plaintiffs.

John P. Scotellaro, Maureen W. Kirby, Peter G. Rush, Amy Lamar Ostrander, Bell, Boyd & Lloyd, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This litigation centers on allegations that Discovery Zone, Inc. ("DZ") and several of its high-ranking corporate officials violated the federal securities laws by perpetrating a fraud on the investing public. Plaintiffs claim that the defendants[1] advanced this fraud by offending generally accepted accounting principles, misrepresenting the financial effects of a major acquisition, and making predictions of growth with no reasonable basis. This series of acts is said to have inflated stock prices, inducing investors to buy into DZ, only to see their stock decline in value after defendants unloaded their shares and disclosed the true state of the company.

In a concurrently issued opinion ("Discovery Zone I"), this Court held that plaintiffs stated a claim for securities fraud under §§ 10 and 20(a) of the 1934 Securities Exchange Act and SEC Rule 10b–5, based on alleged misrepresentations occurring up through January 17, 1995.[2] This opinion ("Discovery Zone II"), addresses the somewhat related issue of whether plaintiffs have met the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs move this Court to

---

1. The lawsuit against defendant Discovery Zone has been stayed by its recent bankruptcy filing. Plaintiffs' claims as to the individual defendants remain, having been reinstated by this Court on June 27, 1996.

2. That opinion extensively recounts the facts underlying this action. They are repeated here only to the extent necessary to resolve the class certification question.

certify a class comprised of "all persons [3] who purchased the common stock of Discovery Zone, Inc." between February 17, 1994, and September 15, 1995. Pl.Second Am.Mot. ¶¶ 1–2.[4] For the reasons stated below, plaintiffs' motion for class certification is granted ·as modified by the Court. The class period will end on January 17, 1995.

## ANALYSIS

■ Plaintiffs have the burden of establishing that class certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Rule 23 of the Federal Rules of Civil Procedure assigns plaintiffs a number of tasks in this endeavor. First, they must satisfy four conditions set forth in Rule 23(a):

(1) The class is so numerous that joinder of all members is impracticable;

(2) There are questions of law or fact common to the class;

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) The representative party will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993); *see also Retired Chicago Police,* 7 F.3d at 596 ("All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class."). Second, plaintiffs must meet one of the three criteria found in Rule 23(b)(1)–(3). *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). Subsection (3), on which plaintiffs rely, permits certification when questions of law or fact common to class members predominate over questions affecting only individual members, and when a class action, as compared with other available litigation options, is a superior vehicle for fairly and efficiently adjudicating the controversy. Fed.R.Civ.P. 23(b)(3).

Defendants raise challenges to the certification based only on subsections (3) and (4) of Rule 23(a), the class representatives' typicality and adequacy of representation. The Court will therefore limit its analysis to these claims.[5] Of these issues, the Court is most concerned with whether the class representatives can fairly and adequately protect class interests.

### I. Adequacy of Representation

■ The named plaintiffs in a class action occupy the critical role of "fairly and adequately protect[ing] the interests of the class." Fed.R.Civ.P. 23(a)(4). The "adequacy" standards are threefold: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied,* 506 U.S. 1051, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993); (2) the named representative must have "a sufficient interest in the outcome to ensure vigorous advocacy," *Riordan v. Smith Barney,* 113 F.R.D. 60, 64 (N.D.Ill.1986); and (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Kriendler v. Chemical Waste Mgmt., Inc.,* 877 F.Supp. 1140, 1159 (N.D.Ill.1995).

Defendants challenge all three elements. We address each in turn.

---

**3.** The class does not include the individual defendants and their immediate families; Blockbuster Entertainment Corporation (DZ's parent), Viacom Inc. (Blockbuster's parent), or any other parent, subsidiary, or affiliate of DZ; DZ officers and directors; any entity in which any excluded person has a controlling interest; and the legal representatives, heirs, successors or assigns of any excluded person.

**4.** Plaintiffs filed their first motion for class certification on March 29, 1995. They were granted leave to amend the motion, and submitted the new version on May 18, 1995. After that motion was fully briefed, plaintiffs filed an amended complaint, and were permitted to brief any issues the amendments raised in relation to class certification. Those papers were filed on December 8, 1995. This opinion cites only to the latter two motions; it will refer to them as "Pl.Am.Motion" and "Pl.Second Am.Mot.," respectively. The defendants' response briefs are cited in the same manner.

**5.** Defendants apparently concede that plaintiffs can satisfy the remaining elements of Rule 23(a), as well as the 23(b) requisites.

## A. Antagonistic Claims

■ First and foremost, a named plaintiff must not have interests antagonistic to those of the class. *Rosario*, 963 F.2d at 1018. Defendants argue that two class representatives, Randy Stark and Bernard Weisburgh, fail this test. Stark is the personal stockbroker for proposed class counsel Mark Gardy; Weisburgh serves as personal broker to proposed class counsel Dennis Johnson. (Stark Tr. at 53; Weisburgh Tr. at 12–13).[6] Defendants contend that Stark and Weisburgh's interest in maximizing their clients' attorneys' fees—fees that potentially could be invested with them—puts them at odds with the rest of the class, whose interest lies in being fully compensated for their losses. This opposition is said to be heightened given that the potential attorneys' fees far exceed the few hundred dollars that Stark and Weisburgh could recover in personal damages.

Defendants add that attorney Johnson has represented Weisburgh, his relatives, and friends in seven class action securities fraud suits arising out of stock purchases that Weisburgh brokered. (Weisburgh Tr. at 12). Stark, moreover, has referred some of his clients to attorney Gardy for representation on securities fraud claims. (Stark Tr. at 47).

Plaintiffs respond by claiming that the situation is no more nefarious than if the representatives were class counsel's grocer or gas station attendant. While counsel might indeed use the attorneys' fees the case generated to purchase more groceries or gas, plaintiffs maintain that this would not taint the representation. Plaintiffs additionally point to Weisburgh's testimony that there are no "quid pro quos" for his acting as a plaintiff, and that he has never promised to refer clients to Johnson in exchange for Johnson's maintaining his account. (Weisburgh Tr. at 54, 165, 167).

Plaintiffs' arguments are unpersuasive. First, the grocer/gas station attendant analogy is inapposite. In contrast to stockbrokers, grocers and gas station attendants generally do not receive commissions from grocery sales and gas purchases. Moreover, conflict of interest concerns are intensified when, as here, the class representatives' possible recovery is dwarfed by potential attorneys' fees. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 94 n. 11 (7th Cir.1977). Finally, the Court's job under Rule 23(a)(4) is not to discern whether the class representative-class counsel relationship creates an actual conflict, but rather to assess the likelihood that a conflict of interest may exist. *Susman*, 561 F.2d at 94 n. 11; *Swain v. Brinegar*, 517 F.2d 766, 780 (7th Cir.1975).

In *Susman v. Lincoln American Corp.*, the Seventh Circuit reviewed a district court's decision to deny class certification on Rule 23(a)(4) grounds. Among the class representatives were an attorney working in the same firm as class counsel, class counsel's mother, and an attorney renting office space from one of the law firms of record. 561 F.2d at 87–89. The district court held that these representatives posed possible conflicts of interest: "[w]hen the class representative is a close professional associate with the attorney of record in the cause, the class representative cannot adequately and fairly represent the class and certification should be denied." *Id.* at 88. Upholding the denial of certification, the appellate court found that it was supported by "a majority of courts which have refused to permit class attorneys, their relatives, or business associates [to act] as class representatives." *Id.* at 90.

The Seventh Circuit explained the rationale behind refusing to certify the class in this situation. Courts fear that when a class representative is closely associated with class counsel, he or she may permit a settlement less favorable to the interests of absent class members. *Id.* at 91 (citing *Stull v. Pool*, 63 F.R.D. 702 (S.D.N.Y.1974)); (*Graybeal v. American Savings & Loan Ass'n.*, 59 F.R.D. 7 (D.Colo.1973)). The close relationship may also increase the danger of champerty.[7]

---

6. The four class representatives, Randy Stark, Bernard Weisburgh, Robert Kahn, and Robert Friedman, were deposed to shed light on class certification issues. Citations to their deposition transcripts will take the form of "[Last name] Tr. at ——."

7. Champerty is defined as:
   A bargain between a stranger and a party to the lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds; it is one type of 'maintenance,' the more general term which

*Susman,* 561 F.2d at 91 (citing *Byrnes v. IDS Realty Trust,* 70 F.R.D. 608, 614 (D.Minn.1976); *Shields v. Valley Nat'l Bank,* 56 F.R.D. 448, 450 (D.Ariz.1971)). Even where the named plaintiff does not expect to share directly in the attorneys' fees, his business relationship with counsel may leave him "more interested in maximizing the 'return' to his counsel than in aggressively presenting the proposed class' action." *Id.* at 95 (quoting the district court).

As personal stockbrokers for class counsel, Stark and Weisburgh have sufficiently close business relationships with them to create a possible conflict of interest. First, they are in a position to render valuable investment tips to class counsel if their claims are given preferential treatment. The fact that Johnson has represented Weisburgh and those close to him in similar actions, and that Stark has referred clients to Gardy, demonstrates that class counsel and their brokers already have a close give-and-take relationship. *See Williams v. Balcor Pension Investors,* 150 F.R.D. 109, 117 (N.D.1993) (barring investment trader from representing class because of appearance that primary motive was to reciprocate for prior representation). Second, facing the possibility of receiving more investment business from class counsel and the commissions that go with it, the brokers have more incentive to maximize fees for the attorneys than to ensure adequate recovery for the class. Third, as in *Susman,* the brokers' possible recovery here is dwarfed by the potential attorneys' fees. *See Susman,* 561 F.2d at 94 n. 11.

In short, the relationship between Stark and Weisburgh and class counsel is inherently riddled with the appearance of and potential for impropriety. The appearance of impropriety is the primary "factor mandating judicial inquiry." *Id.* at 93. This is not to suggest or assume that the representatives and class counsel would turn appearance into reality. However, given that "as of June 30, 1994, Discovery Zone had more than 37 million shares of common stock outstanding," Pl.Am.Mot. at 7, there is a wealth of disinterested investors who could serve as class rep-

resentatives. Under these circumstances, the Court deems it proper to eliminate any possible conflict of interest between the named plaintiffs and the class by dismissing Stark and Weisburgh as class representatives.

The Court will not, however, deny class certification on these grounds. Instead, we will grant plaintiffs sixty days to replace Stark and Weisburgh with new representatives. Any named plaintiffs added must have purchased DZ shares on or before January 17, 1995, the date on which Weisburgh, the last currently named plaintiff, invested in the company. At this point, after plaintiffs have had several chances to amend their complaint, allowing them to join post-January 17 purchasers to the suit would be unfair to the defendants.

Having discharged Stark and Weisburgh as class representatives, the Court analyzes the remaining factors only with respect to Kahn and Friedman.

### B. Plaintiffs' Interest

■ Rule 23(a)(4)'s adequacy component has also been interpreted to require that a class representative understand the basic facts underlying his claims. *Kriendler,* 877 F.Supp. at 1140. General knowledge and participation in discovery are sufficient to meet this standard. *Schwartz v. System Software Assocs.,* 138 F.R.D. 105, 107–08 (N.D.Ill.1991); *Harman v. LyphoMed,* 122 F.R.D. 522, 528 (N.D.Ill.1988).

Defendants argue that Kahn and Friedman fail this condition, citing as proof excerpts from their respective depositions. For example, when asked, Kahn could not identify the class period, (Kahn Tr. at 31–32), and Friedman did not know that two complaints had been filed in his name. (Friedman Tr. at 56). Furthermore, defendants charge that Friedman is insufficiently informed because "he believes the fraud occurred *after* he purchased his shares, not before." Def.Resp.Pl.Am.Mot. at 20 (emphasis in original).

refers to maintaining, supporting, or promoting another person's litigation.

*Black's Law Dictionary* 157 (6th ed. 1991).

■ In legally complex actions such as securities fraud litigation, a plaintiff need not have expert knowledge of all aspects to qualify as a class representative. *In re Newbridge Networks Sec. Litig.*, 926 F.Supp. 1163, 1177 (D.C.1996) (citing *In re AM Int'l Sec. Litig.*, 108 F.R.D. 190, 196–97 (S.D.N.Y. 1985)). The reason people hire lawyers in the first place is to handle the legal niceties of the lawsuit, such as filing necessary papers and mastering the intricacies of the applicable law. To criticize a class representative for uncertainty over the term of a class period that has changed a number of times, or for being unable to keep track of the voluminous documents filed in a case of this magnitude, is to accentuate the trivial.

Furthermore, it defies common sense to argue that Friedman is disinterested because he believes the fraud occurred after his stock purchase. First, he is not a lawyer, and should not be chastised for lacking intimate familiarity with the fraud-on-the-market doctrine. Second, his mention of post-purchase fraud could easily have been a reference to the alleged insider trading that took place after he bought stock. Besides, who would want to admit to buying stock *after* the company had defrauded the investing public?

On the contrary, Kahn and Friedman have demonstrated that they are sufficiently interested and competent to serve as class representatives. Both demonstrate an adequate understanding of the underlying facts and a commitment to fulfill their duties as named plaintiffs. For example, Friedman testified that he filed suit because DZ "misrepresented the earnings of the stock and they inflated the price." (Friedman Tr. at 11). He believed that DZ used improper accounting practices, having "capitalized what it should have expensed." *Id.* at 113. He stated his willingness to devote time and attention to the litigation, and to remain in Chicago for the duration of the trial. *Id.* at 37. Similarly, Kahn explained that he is suing because he was misled by statements DZ made about its merger with McDonald's, the financial significance of closing certain FunCenters, and projections of expansion. (Kahn Tr. at 122–23). Like Friedman, Kahn stated that he will travel to Chicago in the event the case is tried and provide requested information to both class and defense counsel. (Kahn Tr. at 28–30).

The Court finds that Kahn and Friedman are adequate class representatives under Rule 23(a)(4).

## C. Adequacy of Counsel

Defendants proclaim that there are too many lawyers presently representing the plaintiffs. However, the Court believes that its pretrial order of March 21, 1995, sufficiently deals with this issue. Among other administrative provisions, the order designates co-lead counsel and liaison counsel. Should the organization and management of plaintiffs' counsel become problematic, this Court will not hesitate to remedy the situation as it sees fit.

■ Defendants further argue that plaintiffs' failure to comply with Local Rule 39, which requires attorneys to file written statements documenting their contingency fees, in conjunction with plaintiffs' allegedly obstreperous discovery conduct, renders class counsel inadequate. This issue can be disposed of summarily. First, as we stated in *Kriendler*, 877 F.Supp. at 1160, "violations of Local General Rule 39 [are] not relevant to the issue of adequacy as it relates to counsels' competence to litigate this case." Second, it is not at all clear that class counsel's discovery tactics amount to misconduct. Their refusal to produce documents may indeed be legitimate, and defendants have failed to demonstrate otherwise. Defendants' charge that class counsel obstructed the named plaintiffs' depositions, based solely on the number of objections made, is similarly unenlightening, absent a showing that any of the objections were improper. Defendants should address specific discovery violations in a motion to compel or in a motion for a protective order, not with an offhand reference in their response brief to a class certification motion.

The Court finds that class counsel are qualified to represent the class.

## II. Typicality

■ Rule 23(a)(3) requires that the representatives' claims be typical of the class. "A plaintiff's claim is typical if it arises from

the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983); *Kriendler*, 877 F.Supp. at 1158. All class members need not suffer the same injury as the class representatives; rather, the issue is whether the named and unnamed plaintiffs were subjected to same allegedly unlawful conduct that gives rise to a common legal theory. *Rosario*, 963 F.2d at 1018 (citing *De La Fuente*, 713 F.2d at 232–33).

■ Defendants' attempt to manufacture atypicality with respect to Kahn and Friedman is unavailing. "Unusual circumstances," they declare, surround Kahn's purchase of DZ stock. Def.Resp.Pl.Am.Mot. at 19. Defendants' sole piece of evidence on this point consists of Kahn's response to defense counsel's question whether Kahn "likes" investing in stocks that trade on high volume and are prone to large price fluctuations. Kahn answered, "Ordinarily, no." (Kahn Tr. at 125). From this, defendants jump to the conclusion that Kahn is subject to the defense of failing to rely on market integrity.

■ The Court has two responses. First, we remind defendants that in fraud-on-the-market cases, plaintiffs' reliance on market integrity is presumed. *Basic Inc. v. Levinson*, 485 U.S. 224, 241–42, 108 S.Ct. 978, 988–89, 99 L.Ed.2d 194 (1988). While the presumption is rebuttable, Kahn's vague, nonspecific statement about his general thoughts and behavior comes nowhere near to an effective rebuttal. Second, the Court finds it hard to believe that this "defense" is unique to Kahn; defendants' briefing strongly suggests that they will raise the issue of market reliance as to the unnamed plaintiffs as well.

Defendants next assert that Friedman is atypical because he "finds himself subject to the defense that he was not defrauded," based on his testimony that he believed the fraud occurred after he bought DZ stock. Def.Resp.Pl.Am.Mot. at 20–21. As explained above, Friedman's unfamiliarity with the technical legal requirements necessary to establish fraud on the market does not mean he does not think he has a fraud claim. The Court is unpersuaded that his testimony would support a valid market reliance defense, or, in the event that it did, would be atypical of defenses applicable to other class members.

Contrary to defendants' contentions, Kahn and Friedman's claims satisfy Rule 23(a)'s typicality provision. They, like the rest of the class, are suing based on defendants' allegedly fraudulent statements and practices that had the effect of artificially inflating DZ's earnings and stock value. These allegations are embodied in a legal theory that, by definition, applies to the entire class: fraud on the market. This Court was faced with similar facts in *Kriendler*, and held that the representatives' claims were typical of their fellow class members:

> [T]he alleged "damage" resulting from this fraud was of an ongoing nature, since the price of the stock dropped from $21 per share on February 4, 1993 to $8 1/2 per share on July 19, 1993, and continued to trade at about this price throughout the rest of the Class Period. Thus, Plaintiffs buying or selling at any time during the Class Period would have been affected by any fraud which could be linked with "inflated" prices at the time of purchase. Therefore, Plaintiff Kriendler's claims are typical of those shared by the class of plaintiffs....

877 F.Supp. at 1158. This reasoning applies with equal force here. Plaintiffs allege that DZ stock dropped from $18.625 on March 16, 1994, when Friedman purchased his shares, down to $8.125 on February 13, 1995, when the company announced a $9 million fourth quarter loss. Compl. ¶¶ 20, 90. They also state that DZ stock "continued to trade at inflated prices throughout the remainder of the Class Period." *Id.* ¶ 78. Like the *Kriendler* plaintiffs, the class here allegedly sustained damages from a precipitous decline in stock price, which nevertheless remained inflated, and whose descent continued throughout the class period. Consequently, Kahn and Friedman's claims cannot be characterized as "atypical" of the plaintiff class.

### III. Extension of the Class Period

■ In Discovery Zone I, this Court held the class period cannot extend beyond January 17, 1995, the date when the last named representative, Weisburgh, purchased DZ shares. After this point, an essential element of a 10b–5 claim, the purchase or sale of securities, is lacking. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Furthermore, we are bound and persuaded by the decision in *Roots Partnership v. Lands' End Inc.,* 965 F.2d 1411 (7th Cir.1992), which holds that post-purchase statements cannot form the basis of Rule 10b–5 liability in a fraud-on-the-market case. Such statements "could not have affected the price at which plaintiff actually purchased." *Id.* at 1420.

■ This would ordinarily end the matter, but plaintiffs have raised an argument on this point that the Court wishes to address. Plaintiffs maintain that because they have alleged that defendants engaged in a common course of fraudulent conduct spanning the class period, the purchase dates within that period are immaterial. Because the post-purchase statements are interrelated with pre-purchase statements, they provide a link by which the named plaintiffs can represent subsequent purchasers. Plaintiffs cite two unpublished district court decisions from this Circuit for support. *See Feldman v. Motorola,* 1993 WL 497228 (N.D.Ill. Oct. 14, 1993); *Searls v. Glasser,* 1993 WL 28746 (N.D.Ill. Feb. 3, 1993).

In *Feldman,* the court held that such "common course of conduct" allegations raised questions of fact as to the appropriate limits of the class period. 1993 WL 497228, at *5. To set limits on the class period would amount to a "preliminary assessment of the merits," which "should be deferred until after the class has been certified." *Id.* This Court respectfully disagrees. Having been presented with a motion to dismiss, the Court had the responsibility of assessing whether plaintiffs stated a 10b–5 claim. In finding that plaintiffs could not establish one of the elements as to post-January 1995 statements, we did not express an opinion on the merits, but rather on the sufficiency of the complaint. Alleging a common course of conduct cannot cure this pleading deficit. Moreover, there are serious questions as to whether the post-January 1995 pronouncements constitute false or misleading statements even under the most liberal reading of Rule 10b–5.[8]

The plaintiffs' reliance on *Searls v. Glasser* for the proposition that post-purchase statements forge a substantive link overcoming the class representatives' inability to represent subsequent purchasers, who may then sue based on those statements, is similarly misplaced. *Searls* held only that post-purchase statements may provide circumstantial evidence of fraud occurring before the purchase date, not give rise to liability in and of themselves. 1993 WL 28746, at *5. This Court declines to adopt the plaintiffs' novel interpretation of *Searls.* Instead, the Court must follow the sound post-purchase rule established by the Seventh Circuit in *Roots.*

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for class certification is granted as modified in the following respects. The class period will not be extended to September 15, 1995, but rather will end on January 17, 1995, when the last currently-named representative, Weisburgh, purchased his shares. Because Weisburgh and Stark are dismissed as class representatives, plaintiffs have sixty days to replace them with appropriate substitutes.

---

8. Plaintiffs may wish to reexamine the wisdom of relying on a common course of conduct theory. As defendants point out, the date at which the market "learned" about an alleged common course of fraudulent conduct (perhaps with the November 1994 filing of this lawsuit) may be much earlier than the time when the market received information as to each segment of the alleged fraud sufficient to cure all the misstatements. This theory may therefore limit class recovery instead of expanding it.