Sarah **HARMAN, Samuel Golden, Emery Sugar and Emil Sugar, Joseph Harris and Barbara Kay Ament, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**LYPHOMED, INC., John N. Kapoor, Neil Gurwara and R. Richard Weiland II, Defendants.**

No. 88 C 0476.

United States District Court, N.D. Illinois, E.D.

Oct. 12, 1988.

Robert D. Allison, Chicago, Ill., Jules Brody, Mark Levine, Stull, Stull & Brody, New York City, for plaintiffs.

William R. Carney, John B. Bitner, Larry L. Thompson, John W. Rotunno, Bell, Boyd & Lloyd, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

This securities fraud case is here on plaintiffs' motion for class certification.

Defendant LyphoMed, Inc. ("LyphoMed") produces and supplies drugs to hospitals and clinics. Plaintiffs purchased LyphoMed stock during the proposed class period, March 31, 1987 through March 31, 1988 (the "class period").

The essence of plaintiffs' claim is that defendants, in a series of written financial reports and press releases, materially misrepresented LyphoMed's financial condition. LyphoMed allegedly concealed from investors the damaging results of investigations conducted by the Food and Drug Administration ("FDA"). By withholding this information, defendants defrauded the market into overestimating the value of LyphoMed stock. Plaintiffs relied on the market price as an accurate reflection of LyphoMed's financial condition. In March, 1988, when LyphoMed finally disclosed the true extent of its regulatory infractions, the value of its stock declined sharply. Plaintiffs claim to have suffered damages as a result of defendants' year-long scheme.

Plaintiffs move to certify the class of all persons who purchased LyphoMed common stock during the proposed class period and who suffered damages as a result. The defendants, immediate family of the individual defendants, and entities in which the defendants have a controlling interest, are excluded from the class.

For the reasons described below, plaintiffs' motion is granted. The class period is amended to begin July 21, 1987.

## DISCUSSION

In ruling on a motion for class certification, "the allegations are taken as true and the merits of the complaint are not examined." *Allen v. Isaac*, 99 F.R.D. 45, 49 (N.D.Ill.1983). Class certification is governed by Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs must meet the requirements of Rule 23(a), which provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of

law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, plaintiffs must meet one of the requirements of Rule 23(b). In this case, plaintiffs contend the claim satisfies 23(b)(3); *viz.* common questions of law or fact predominate over questions affecting only individual class members, and a class action is superior to other methods of handling the litigation.

### A. Numerosity: 23(a)(1)

▇▇▇ Rule 23(a)(1) requires that the class be so numerous that joinder is impracticable. The exact number of class members is not presently known, nor need it be. *Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 785 (N.D.Ill.1984). Plaintiffs claim, and defendants agree, that the average weekly trading volume during the class period exceeded one million shares. In such a case, the court can reasonably assume that joinder of all potential plaintiffs is impracticable. *Id.*

### B. Commonality and Predominance: 23(a)(2) and 23(b)(3)

▇▇▇ Rule 23(a)(2) asks whether the claims involve common questions of law or fact; the related inquiry in Rule 23(b)(3) is whether these common questions predominate over individual ones. For convenience, the two are discussed together.

According to plaintiffs, the essential scenario, common to all claims, is that defendants materially misrepresented LyphoMed's financial condition. This misrepresentation duped the market into overestimating LyphoMed's value. Plaintiffs, erroneously believing the market price of LyphoMed accurately reflected its value, purchased stock for more than it was worth. When the misrepresentations became known, the market price fell, and plaintiffs suffered injury as a result.

Under this scheme, at least three critical questions are common to all claims: did

defendants materially misrepresent the company's financial condition, did they act with the necessary scienter, and did the market price for LyphoMed stock reflect these misrepresentations. *See Basic, Inc. v. Levinson,* —— U.S. ——, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988); *Grossman v. Waste Management, Inc.,* 100 F.R.D. at 785–86. Though defendants insist that plaintiffs have not shown the existence of common questions, their insistence is unsupported. Accordingly, the requirements of 23(a)(2) have been met.

Turning to the predominance requirements of 23(b)(3), defendants claim that individual questions of reliance, materiality, scienter, and damages overwhelm any common issues. They are mistaken.

### 1. Reliance

■ Reliance is an essential element of a rule 10(b)–5 action. *Basic, Inc. v. Levinson,* 108 S.Ct. at 989 (1988); *Ray v. Karris,* 780 F.2d 636, 640 n. 2 (7th Cir.1985). Ordinarily, each plaintiff must demonstrate that he relied on defendant's misrepresentations. There is an exception to this principal, however. When the plaintiff properly alleges a fraud on the market, as plaintiffs do here, the court may presume reliance. The Supreme Court recently explained the theory:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements....

*Basic, Inc. v. Levinson,* 108 S.Ct. at 988–99 (1988), quoting *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3d Cir.1986) ("By artificially inflating the price of the stock, the misrepresentations defraud purchasers *who rely on the price* as an indication of the stock's value" [emphasis added.]) In other words, investors rely on the price, and the price reflects the misrepresentations. By relying on the price, investors indirectly rely on the misrepresentations. Reliance on particular misstatements, then, need not be proven in the individual case. *Basic,* 108 S.Ct. at 990–91.

Defendants try to distinguish *Basic.* They note that LyphoMed stock is traded over the counter, and that the fraud on the market theory does not apply to such securities. But nothing in the theory limits its application to stocks which trade on a particular exchange. Rather, the question is always whether the stock trades in an efficient market, i.e. one in which material information on the company is widely available and accurately reflected in the value of the stock. *Basic,* 108 S.Ct. at 991 and n. 24 (citing studies). While some over-the-counter stocks no doubt trade in a less developed market than some New York Stock Exchange issues, the inquiry in an individual case remains the development of the market for that stock, and not the location where the stock trades.

Here, plaintiffs allege, and defendants admit, that LyphoMed is a publicly held company with average weekly trading volumes during the class period in excess of one million shares. Over a dozen securities analysts followed and reported on LyphoMed during this period. The stock had numerous market makers. And, perhaps most significant, LyphoMed is among the companies required by the SEC to file an S–3 Registration Statement. Only corporations whose stocks are actively traded and widely followed use the S–3 form. Black, *Fraud on the Market: A Criticism of Dispensing With Reliance Requirements in Certain Open Market Transactions,* 62 N.C.L.Rev. 455, 468 (1984).[1] Plaintiffs have alleged with adequate specificity that

---

1. The choice of form is critical because it determines how much information the company must disclose in its prospectus. Companies which file the S–3 form are required to disclose the *least* amount of information. Other companies file either an S–2 or S–1 form. The SEC's explicit rationale for this system is that information on companies which file an S–3 form is widely available in the market, and therefore need not be disseminated in the prospectus. Black, *Fraud on the Market,* at 468. In other words, the SEC established reporting requirements for LyphoMed on the premise that the stock traded in an open and efficient market.

LyphoMed traded in an open and developed market. In a ruling on class certification, this court will not inquire further into the merits of the allegation. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Allen v. Isaac,* 99 F.R. D. 45, 49 (N.D.Ill.1983).

### 2. Materiality and Scienter

Defendants next argue that materiality and scienter are individual questions. They note that during the proposed class period, the mix of information available to investors varied greatly. LyphoMed released information regarding its financial condition and regulatory status throughout much of the period. This makes scienter and materiality individual questions unique to each claim. In other words, the misstatement on day 1 may be material to the investor who buys on day 2, but if the correct information becomes widely available on day 3, the initial misstatement is not material to the investor who buys on day 4. In the same respect, a defendant may act with the requisite scienter regarding the first misstatement but not for subsequent misstatements. Proof, defendants contend, will necessarily vary and one plaintiff may succeed in proving scienter while another may not.

A number of courts have considered and rejected this argument. *See, e.g., Katz v. Comdisco,* 117 F.R.D. 403, 411–12 (N.D.Ill. 1987); *Grossman v. Waste Management, Inc.,* 100 F.R.D. 781, 787 (N.D.Ill.1984); *In re McDonnell Douglas Corporation Securities Litigation,* 98 F.R.D. 613, 616–18 (E.D.Mo.1982); *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 94–95 (S.D.N.Y.1981); *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 349 (N.D.Ill. 1978). The analysis in these cases is persuasive.

First, the mere fact that the misrepresentations occurred over a period of time does not make individual issues predominant. *See, e.g., Grossman,* 100 F.R.D. at 787 (purchasers of stock over one year period certified as class); *Hochschuler,* 82 F.R.D. at 349 (purchasers over two year period certified). The more central inquiry is whether the misrepresentations varied over the class period. *Id.* In this case, plaintiffs allege a continual, unchanging scheme on the part of all defendants, extending throughout the class period, to withhold damaging findings by the FDA. The fraud alleged is common to all defendants and each plaintiff has the same motive to expose defendants' deceptions. *McDonnell,* 98 F.R.D. at 617; *Dura–Bilt,* 89 F.R. D. at 100; *contra Gelman v. Westinghouse Electric Corp.,* 73 F.R.D. 60 (W.D. Pa.1976) (certification improper when class period involved independent, significant events regarding scheme conceived prior to class period), *aff'd by an equally divided court,* 612 F.2d 799 (3d Cir.1977). Second, the materiality of a statement does not vary among similarly situated investors. *Dura–Bilt,* 89 F.R.D. at 94. The question for all plaintiffs, then, is whether the hypothetical reasonable investor would attach importance to a particular misstatement. This is an objective standard. Therefore, the essential inquiry into materiality is the same for all claims. *Id.; Hochschuler,* 82 F.R.D. at 349. Finally, even if events ultimately reveal that some misstatements, though material when made, were no longer material at some later point in the class period, the class can be amended as appropriate. Fed.R.Civ.P. 23(c). Accordingly, materiality and scienter do not raise individual issues which defeat certification.[2]

---

**2.** Defendants rely on *J.H. Cohn & Co. v. American Appraisal Associates, Inc.,* 628 F.2d 994 (7th Cir.1980), for the proposition that varying fact patterns create individual issues which defeat certification. The court agrees with Judge Marshall of this District who recently addressed the identical argument. *Grossman,* 100 F.R.D. at 787 n. 5. As Judge Marshall pointed out, the Seventh Circuit in *J.H. Cohn* refused to issue a writ of mandamus overturning the lower court's refusal to grant certification. The court did not conduct a *de novo* review of the Rule 23 deter-

mination. Rather, the question was merely whether mandamus was appropriate, and "[t]he record before us fails to demonstrate a clear and indisputable right for the drastic remedy of mandamus." 628 F.2d at 997. In any case, *J.H. Cohn* involved written and oral communications extending over three years. *Id.* at 996. Oral misstatements can vary from investor to investor in the way a fraudulent quarterly report cannot. Individual issues are thus much

### 3. Damages

■ Lastly, defendants claim that damages are specific to each plaintiff and therefore raise individual issues. The claim is without merit. Courts have repeatedly held that individual inquiry into damages does not defeat certification. *See, e.g., Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975); *Katz,* 117 F.R.D. at 412; *McDonnell,* 98 F.R.D. at 617.

### C. Typicality: 23(a)(3)

The next inquiry is whether the claims of the named plaintiffs are typical of those of the class. Plaintiffs argue that typicality requires only that the named representatives have a claim with the same essential characteristics as the claims of the class. Factual distinctions between the claims of named plaintiffs and those of other class members do not defeat typicality, and similarity of legal theory controls over dissimilarity in the facts. *See De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (collecting cases). Under this standard, plaintiffs insist that the named representatives are typical of the class, since all allege the same broad course of fraudulent conduct requiring substantially the same proof.

In this circuit, however, the claim of a named plaintiff is not typical when "a major focus of the litigation will be on an arguable defense unique to the named plaintiff...." *Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir.1974). Defendants claim that the facts surrounding Sarah Harman's purchase raise a unique defense.

Before considering this claim, it is important to note what is not presently in dispute. Defendants have not attacked the typicality of any named plaintiff besides Harman.[3] Plaintiffs have adequately shown that the other proposed class representatives are typical. All purchased during the proposed class period, and all claim to be the victims of defendants' ongoing fraud on the market.

The essence of the attack on Harman's claim is that she purchased stock even after she knew of LyphoMed's trouble with the FDA. Consequently, since she had the information defendants allegedly withheld, she cannot claim to have been duped by their alleged fraud on the market. Furthermore, since she knew the actual state of affairs, the alleged deceptions were not material to her. She therefore is subject to unique defenses which render her claim atypical.

■ The facts do not support defendants' view. In July, 1987, the FDA cited LyphoMed for numerous violations. Defendants withheld this information, and in fact issued a quarterly report in August proclaiming the company's vigorous growth. Harman made her first purchase November 3, 1987. A week later, LyphoMed issued its next quarterly report. This report again withheld the facts regarding the FDA, and again described the company's considerable success. Harman made another purchase later the same month.

In December, LyphoMed issued a news release which admitted for the first time that the FDA had cited the company for regulatory violations. However, in that same news release, LyphoMed misrepresented the extent of the violations uncovered by the FDA. It downplayed the investigation, dismissing the infractions as "small" or "procedural." And in a newspaper article which appeared the same day, the chairman of LyphoMed stated that the company had "corrected these items."

Harman made her last purchase the next month. She testified repeatedly at deposition that she made the purchase because "I figured all the bad news is out, the compa-

---

more likely to overwhelm the litigation when the claim turns on oral misrepresentations.

**3.** One explanation may be that the motion for class certification came at a fairly early stage in the litigation and that defendants have not completed discovery. *See* Fed.R.Civ.P. 23(c)(1);

*Bieneman v. City of Chicago,* 838 F.2d 962, 964 (7th Cir.1988) (per curiam) (decision on class certification should come "as soon as practicable" after commencement of the action). As the case unfolds, it may be necessary to redefine the class. Rule 23(c)(1).

ny will correct the violations. I didn't know that in March [1988] they will come out with another report." Harman dep., p. 226. *See also* pp. 218, 224, 225, 227, 228, 301. Given the substance and tenor of LyphoMed's December news release, Harman's view of the company in January is hardly surprising. Seen in this light, her purchase in January was identical to her purchases in November. Each purchase occurred during defendants' comprehensive scheme to conceal damaging reports by the FDA. Each purchase followed the release of glowing, but false, reports by defendants. Far from demonstrating an absence of reliance, the record at this point indicates that Harman—to her continued detriment—relied repeatedly on the defendants' misrepresentations. To succeed on her claim, she will have to prove fraud extending across a considerable portion of the class period. Consequently, any suggestion that her claim is atypical is without foundation.

Defendants' reliance on *Epstein v. American Reserve Corp.*, No. 79 C 4767 (N.D.Ill. April 20, 1988) [available on WESTLAW, 1988 WL40500] and *Greenspan v. Brassler*, 78 F.R.D. 130 (S.D.N.Y. 1978) is misplaced. In *Epstein* and *Greenspan*, plaintiffs made their last purchases *after* the alleged fraud had ended and all previously withheld information had been disclosed. *Epstein*, slip op. at 10 (fraud revealed and information disclosed March, 1979; plaintiff's purchases continue until March, 1980); *Greenspan*, 78 F.R.D. at 131–32 (disclosure of previously concealed documents April, 1974; last purchase the following month). These post-fraud purchases led to the natural conclusion that the fraud had no bearing on the decision to buy. The plaintiffs, in other words, did not rely on the market to make their decisions. The decisions are thus inapposite to this dispute.

### D. Adequacy: 23(a)(4)

The final requirement of Rule 23(a) is that the named plaintiffs be adequate class representatives. The interests of the named plaintiffs must coincide with those of the class, and counsel for the named plaintiffs must be professionally and financially prepared to conduct the litigation. *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977); *Grossman*, 100 F.R.D. at 789–90.

Again, there is no dispute regarding the adequacy of any named plaintiff except Harman. Furthermore, the analysis under the typicality requirement of 23(a)(3) demonstrates that Harman's interests coincide precisely with those of the class. In addition, this court has no doubt that plaintiffs' counsel is competent; defendants do not suggest otherwise.

Defendants, however, claim Harman is inadequate because she lacks familiarity with her case. Several courts have recently addressed this argument. The trend in the cases is to focus less on the knowledge of unsophisticated plaintiffs and more on the skill of plaintiffs' counsel. *See, e.g., Klein v. A.G. Becker Paribus, Inc.*, 109 F.R.D. 646, 51 (S.D.N.Y.1986); *Weinberger v. Jackson*, 102 F.R.D. 839, 845 (N.D.Cal. 1984). As one court explained:

[T]he court would be naive to apply a rule that lay persons purporting to represent a class[,] cannot rely heavily on their attorneys for guidance, advice, and financial assistance. Lay persons rely on attorneys for such purposes in individual actions, and there appears to be no strong policy reason to preclude them from doing so in class actions. Just as a plaintiff, otherwise adequate, with inadequate counsel might be deemed to be an inadequate representative, an unsophisticated plaintiff with competent counsel may be deemed to be an adequate representative.

*Ross v. Bank South, N.A.*, (CCH) Fed.Sec. L.Rep. ¶ 92,526, p. 93,149, 93,150 (N.D. Ala. 1986) [available on WESTLAW, 1986 WL2702]. In a complex securities case involving novel economic and legal theories, *Basic*, 108 S.Ct. at 993 (fraud on the market still-developing as a legal doctrine) (White, J., dissenting), it is irrational to expect plaintiffs to exhibit a detailed knowledge of the issues.

Nonetheless, even if the standard were how much Harman knows about her claim, she would qualify as an adequate representative. The extent of her knowledge and involvement in this case is set out in plaintiffs' reply brief to this motion. Without repeating it here, the court agrees with plaintiffs that she "knows what this lawsuit is about. That is all [s]he needs to know in order to provide the class with adequate representation." *Katz*, 117 F.R.D. at 410.

Finally, the court believes a class action is the best method of handling this litigation. The class should be certified pursuant to Fed.R.Civ.P. 23(b)(3), and appropriate notice given to class members.

### E. Class Period

Plaintiffs propose a class period beginning March 31, 1987 and ending March 31, 1988. This is overbroad. Defendants did not receive the result of the FDA investigation until July 21, 1987. Though the FDA investigation began earlier, there is no allegation that defendants knew the results before July. It is the information contained in the July report which plaintiffs claim was wrongfully withheld. Consequently, plaintiffs who purchased stock before that time cannot claim to have been misled by an artificially inflated market. *See Katz*, 117 F.R.D. at 411. The class period is adjusted accordingly.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' motion to certify a class is granted.

(2) Pursuant to Fed.R.Civ.P. 23(b)(3) a class is hereby certified to include all persons who purchased LyphoMed common stock during the period from July 21, 1987 through March 31, 1988 and who were damaged as a result. Excluded from the class are the defendants, members of the immediate family of individual defendants, any entity in which any defendant has a controlling interest, and the legal representatives, heirs, successors or assigns of any defendant.

(3) A status hearing is set for November 9, 1988 at 9:15 a.m. to consider the matter of notice pursuant to Fed.R.Civ.P. 23(c)(2).