David WALSH, on behalf of himself and all others similarly situated, Plaintiff,

v.

CHITTENDEN CORPORATION, William H. Bruett, Jr. and Richard M. Chapman, Defendants.

No. 2:91–CV–208.

United States District Court, D. Vermont.

June 25, 1992.

L. Randolph Amis, III, Wiener & Amis, Burlington, Vt., Dennis J. Johnson, Susan Schneider Thomas, Zlotnick & Thomas, Bala Cynwyd, Pa., for plaintiff.

Michael B. Clapp, Dinse, Erdmann & Clapp, Burlington, Vt., I. Scott Bieler, Roger Hawke, Brown & Wood, New York City, for defendants.

## OPINION AND ORDER

PARKER, Chief Judge.

Plaintiff filed this class action complaint on behalf of all persons who purchased common stock of Chittenden Corporation ("Chittenden" or "bank") from March 29, 1989 through August 15, 1990, claiming that Chittenden and two individuals alleged to be "controlling persons" of the bank committed fraud in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), 78t(a), and Securities and Exchange Commission (SEC) Rule 10b–5, 17 C.F.R. § 240.10b–5. The complaint also alleges pendent common law fraud and negligent misrepresentation claims.

The action alleges that defendants knowingly concealed adverse facts relating to the bank's financial condition and prospects during the class period, and that they conveyed a falsely rosy picture to the public through news releases, SEC filings, financial statements and other communications, thereby artificially inflating the price of Chittenden stock. In particular, plaintiff alleges that the bank's loan loss reserve was deliberately understated, in light of the bank's exposure on certain large loans that defendants knew would be uncollectible.

Pending before the court are defendants' motion to dismiss (paper # 7 in the court's file), defendants' motion for summary judgment (paper # 28) and plaintiff's motion to certify class (paper # 3). The issues are all resolved, for the reasons that follow, in plaintiff's favor.

## I. MOTION TO DISMISS

Defendants contend that this action is really about corporate mismanagement, which is not actionable under the federal securities laws. At best, they argue, plaintiff's complaint alleges "fraud by hindsight," see, e.g., Denny v. Barber, 576 F.2d 465, 470 (2d Cir.1978); Hershfang v. Citicorp, 767 F.Supp. 1251, 1252 (S.D.N.Y. 1991): When Chittenden was forced, in August of 1990, to recognize that certain outstanding commercial real estate loans were uncollectible and consequently to announce a $6.8 million increase in its loan loss reserve and to suspend its quarterly dividend, plaintiff combed through the bank's public statements of the preceding 16 months, found optimistic pronouncements at odds with the ultimate performance of the bank's loan portfolio, and yelled "fraud!" If that were an accurate representation of plaintiff's case, dismissal would be warranted. In fact, however, the complaint contains more: it details and documents numerous public statements issued by the bank during the class period that allegedly misrepresented material facts, and provides a solid basis for inferring that defendants knew or recklessly disregarded that the statements would mislead the public. As plaintiff recapitulates in his most recent memorandum: "the principal claim of

plaintiff's Complaint [is] that it was materially misleading for the Bank to issue statements touting the strength of its portfolio at the same time it was secretly sitting on $15 million of 'performing' assets which defendants knew or recklessly failed to know were certain to enter the Bank's nonperforming assets in the future and lead to material loan losses." Such a claim is actionable under § 10(b) of the Securities Exchange Act of 1934.[1] See *Ouaknine v. MacFarlane*, 897 F.2d 75, 81 (2d Cir.1990); *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 164 (2d Cir.1980) ("Liability may follow where management intentionally fosters a mistaken belief concerning a material fact, such as its evaluation of the company's progress and earnings prospects in the current year."). Whether the claim will be proved to the satisfaction of a jury remains to be seen; at present, of course, the facts as alleged in the complaint are accepted as true. *Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986).

Short of this sweeping attack on the lawsuit, defendants raise two specific challenges to the sufficiency of the complaint under Rule 9(b),[2] the first for failure to plead scienter with the requisite particularity, the second for failure to properly plead a fraud on the market.

### A. *Scienter*

■ Because the claim under § 10(b) and Rule 10b–5 asserts fraud, it is subject to the pleading constraints of Rule 9(b). *Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir.1982). "To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). Defendants concede that the complaint states with adequate particularity the content of each alleged misrepresentation, the time and place of its utterance, and its attribution to defendants. They contend, however, that the complaint fails to state the scienter requirement of a § 10(b) action with the particularity mandated by Rule 9(b).

"Under Fed.R.Civ.P. 9(b), a complaint alleging fraud may aver intent generally, but 'it must nonetheless allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent.'" *Kramer v. Time Warner Inc.*, 937 F.2d 767, 776 (2d Cir.1991) (quoting *Cosmas v. Hassett*, 886 F.2d at 12–13); accord *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990); *Ouaknine v. MacFarlane*, 897 F.2d at 80–81; *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247–48 (2d Cir.1987). "To satisfy the scienter requirement, a plaintiff need not allege facts which show the defendants had a motive for committing fraud, so long as the plaintiff ... adequately identifies circumstances indicating conscious behavior by the defendants." *Cosmas v. Hassett*, 886 F.2d at 13. Defendants maintain that the factual basis for a "strong inference" of fraudulent intent is absent from the complaint.

A review of the complaint, however, reveals an ample basis for inferring fraudulent intent. The allegations in the complaint, accepted as true for purposes of this motion, identify numerous specific state-

---

1. That section makes it "unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j. Under this authority, the SEC promulgated Rule 10b–5, which specifically proscribes material misrepresentations, misleading statements, and practices which "operate as a fraud or deceit upon any person" in connection with the purchase or sale of securities. 17 C.F.R. § 240.10b–5. See *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195–96, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976).

2. Fed.R.Civ.P. 9(b) provides:

 In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

ments made by defendants in circumstances which easily justify the inference that defendants knew or were reckless in not knowing that the statements were misleading or false. It is pointless to reiterate the complaint's allegations in toto; a summary of the allegations concerning the bank's two largest commercial real estate loans, to Marble Island Associates (for development and construction of a resort club) and to Mt. Ascutney Associates (for development of a ski resort), will suffice. The complaint alleges facts which show that, at the beginning of the class period, defendants possessed information that these major loans were unlikely ever to be repaid but concealed the information from the public, all the while classifying the loans as "performing assets," noting that "[p]rogress was made in reducing all non-performing asset categories during 1988," and voicing optimistic prospects for the bank's loan portfolio. Complaint ¶ 29 (quoting 1988 Annual Report, at 36). For example, defendants knew or recklessly failed to know that the New England real estate market was in a "severe freefall," ¶ 30(a); that the Marble Island and Mt. Ascutney loans were especially vulnerable because no payments were to be made on the principal until maturity, and interest payments would be drawn from a "set aside" of a portion of the original loan proceeds, ¶¶ 30(c), 32(f), 33; that Mt. Ascutney was "facing serious financial problems" and would not be able to repay over $10 million, which had been issued by Chittenden in part to retire a preexisting problem loan, ¶¶ 30(e), 38–44; that Mt. Ascutney had insufficient operating funds during 1988 because of numerous obligations, as detailed in ¶¶ 45 and 46; that Mt. Ascutney showed heavy operating losses and, by April 1989, its interest reserve had been expended, ¶¶ 46, 49; that the $3.3 million loan to Marble Island was delinquent as of March 1, 1989, although still classified as "performing" because it had not yet been delinquent for 90 days, ¶¶ 31, 32(e), 35; and

that Marble Island had incurred operating deficits throughout 1988, that the property was subject to numerous mechanics liens, and that the bank had inadequate collateral, ¶¶ 34, 37.

To undermine the inference of knowledge and intent, defendants point to several places in the documentary record[3] where the bank in some fashion acknowledged the economic slump and the presence of risky loans in its portfolio. Indeed, in October of 1989, half way through the class period, Chittenden announced an increase of $5.3 million in the bank's loan loss reserve, causing a loss in the third quarter of 1989 and a drop in the price of Chittenden stock. These points may suggest, of course, that not everything that Chittenden did or said during the class period was fraudulent. But they do not negate the inference of fraud arising from the statements that *are* alleged to be misleading and from the alleged material omissions. Plaintiff maintains that the October 1989 announcement disclosed only *part* of the true magnitude of the problems faced by the bank and that the bank continued to conceal and misrepresent the sorry state of its loan portfolio. See Complaint ¶¶ 23(g), 67–68, 83. As summarized by plaintiff, the complaint alleges that

> although defendants partially revealed Chittenden's problems in October 1989, Chittenden's stock continued to trade at inflated values due to defendants' misrepresentations issued concurrent with the Bank's announced increase in its loan loss allowance and because the allowance (even after the increase) remained grossly deficient in that defendants, as subsequently admitted, did not adjust the allowance to reflect its exposure on its largest loan, then in default.

Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, at 14.

The irony of defendants' attack on the complaint for omitting various representa-

---

**3.** When deciding a motion to dismiss, the court may consider documents attached to the complaint or incorporated in the complaint by reference. Also, in a securities fraud action, judicial notice of publicly filed disclosure documents is

proper. *Kramer v. Time Warner Inc.*, 937 F.2d at 773–74. The court gives no weight, however, to newspaper articles referred to by defendants in their memoranda that are not incorporated in the complaint.

tions made by the bank in its public filings should be noted. In one breath defendants castigate plaintiff for filing a complaint "cram[med with] much irrelevant detail" and "adorned with unnecessary surplusage and background"; in the next, they fault plaintiff for neglecting detail and background. A happy medium is a rare commodity. No doubt fraud must be pleaded with particularity. "Rule 9(b), however, must be read together with rule 8(a) which requires only a "short and plain statement" of the claims for relief." *Ouaknine v. MacFarlane*, 897 F.2d at 79.

Defendants also challenge plaintiff's interpretation of many of the statements alleged to be false and misleading, arguing at length that the statements were taken out of context or misconstrued. Defendants thus engage in endless quibbling over the proper reference of "minimal risk," "asset quality" and other terms endemic to corporate disclosure statements. These disputes raise factual questions proper for a jury's consideration; at this juncture it is sufficient if the complaint, construed in plaintiff's favor, alleges that defendants' statements and omissions deceived the public and that a factual basis for a strong inference of scienter is shown. That burden has been met. For example, regardless of how the statements it did make are interpreted, Chittenden's alleged failure to reveal that its substantial loan to Mt. Ascutney was in fact uncollectible at a time when it knew that to be the case, thereby artificially inflating the price of Chittenden stock, states a claim of securities fraud.[4]

The cases relied upon by defendants are distinguishable. Illustrative is *Hershfang v. Citicorp*, 767 F.Supp. at 1257, where plaintiffs sought to draw an inference of

fraudulent intent from optimistic statements made by Citicorp executives as reported in newspaper articles, based on subsequent events—"what plaintiff characterizes as Citicorp's 'stunning about-face' announcement, two days before he filed his complaint, of a dividend cut, layoffs, and an increase in loan loss-reserves." The court rejected the claim:

Plaintiff fails, however, to allege any facts that lead to this inference. In *Goldman* [*v. Belden*, 754 F.2d 1059 (2d Cir.1985) ], "*detailed in the Complaint*" were allegations that defendants' optimistic sales predictions were belied by their actual knowledge of contradictory facts. 754 F.2d at 1068–69 (emphasis added). Here, plaintiff has failed to " 'allege particular facts demonstrating the knowledge of defendants at the time that such statements were false,' " *DiVittorio*, 822 F.2d at 1248 (*quoting Luce*, 802 F.2d at 57), nor has he set forth any facts, as opposed to conclusory allegations, to show that defendants' opinions and projections were issued "without reasonable genuine belief." *Herskowitz v. Nutri/System, Inc.*, 857 F.2d 179, 184 (3d Cir.1988).

The complaint as a whole alleges simply that defendants' optimism about Citicorp's prospects turned out wrong. Missing are any facts or identified circumstances that would generate an inference of guilty knowledge.

*Id.* Emphatically, the complaint in the present case bears little resemblance to the complaint described in *Hershfang*. See also *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) (dismissal of securities fraud action against accounting firm upheld where complaint

---

4. Defendants respond that the Mt. Ascutney loan continued to be a "performing" asset when the 1988 Annual Report was issued, as it was not in default for over 90 days, and plaintiff fails to allege that this method of accounting is flawed. This misses the point. Plaintiff is not challenging the bank's technical criteria for characterizing assets as "performing" or "nonperforming"; he is saying, simply, that the bank's statements touting the prospects of its loan portfolio misled the public by not divulg-

ing what it knew of the real prospects of collecting on the Mt. Ascutney loan, regardless of the bank's technical compliance with recognized accounting procedures. See *McMahan & Co. v. Wherehouse Entertainment, Inc.*, 900 F.2d 576, 579 (2d Cir.1990), *cert. denied*, —— U.S.——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991) ("disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers").

did not "give examples of problem loans that [accounting firm] should have caught, or explain how it did or should have recognized [sic] that the provisions for reserves established by [the bank]'s loan officers were inaccurate"); *Denny v. Barber,* 576 F.2d at 469 (dismissal upheld where allegations failed to specify "what loans, at what times, and in what amounts were 'risky'").

I recognize what the Second Circuit has termed the "salutary purposes of Rule 9(b)," which include "safeguard[ing] defendant[s]' reputation and goodwill from improvident charges of wrongdoing" and "serv[ing] to inhibit the institution of strike suits." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990). These purposes ought to be rigorously enforced. Rule 9(b), however, does not abrogate "[t]he general rule that pleadings are to be construed in the light most favorable to the pleader and accepted as true, and not be dismissed, unless it appears that plaintiff can prove no set of facts that would entitle him to relief." *Id.* (citations omitted). Although defendants proclaim the "strikingly similar allegations" between this complaint and others which have been dismissed by other courts, and which defendants believe amount to an "explosion in loan loss reserve litigation in the wake of the recent economic downturn in the Northeast," Defendants' Memorandum in Support of Their Motion to Dismiss, at 18, each complaint deserves individual scrutiny. A lawsuit, like this one, that does state a claim and that avers the elements of securities fraud with particularity must not be dismissed without affording the plaintiff an opportunity to prove his allegations.[5]

### B. *Fraud on the Market*

■ In addition to proving that defendants fraudulently misrepresented or omitted material facts in connection with the purchase or sale of a security, a securities fraud plaintiff must also show that he or she reasonably relied upon the defendants'

statements. *Basic Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988). Plaintiff here does not allege that he relied directly on Chittenden's misrepresentations in deciding to purchase stock. Rather, he asserts that he relied on the integrity of the market—that is, he assumed that the price of the stock reflected its actual value—but that the stock price in fact was artificially inflated by virtue of defendants' fraud. Thus the action alleges what is known as fraud on the market. The theory has been explained as follows:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3d Cir.1986), *quoted in Basic Inc. v. Levinson,* 485 U.S. at 241–42, 108 S.Ct. at 988–89.

■ The theory of fraud on the market does not do away with the reliance requirement of a Rule 10b–5 cause of action; reliance, however, is presumed. "Requiring a plaintiff to show a speculative state of facts, *i.e.,* how he would have acted if omitted material information had been disclosed, or if the misrepresentation had not been made, would place an unnecessarily unrealistic evidentiary burden on the Rule 10b–5 plaintiff who has traded on an impersonal market." *Basic Inc. v. Levinson,* 485 U.S. at 245, 108 S.Ct. at 990 (citations omitted). "Because most publicly available

---

**5.** Defendants insist that the court must ignore all allegations of misrepresentations made after plaintiff David Walsh purchased his shares of Chittenden stock on March 6, 1990. The court does not reach this legal issue, in light of the conclusion that the allegations of fraudulent statements made prior to March 6, 1990 are sufficient to state a claim of securities fraud with requisite particularity.

information is reflected in market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action." *Id.* at 247, 108 S.Ct. at 992. The presumption is rebuttable: "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Id.* at 248, 108 S.Ct. at 992.

 One premise of the theory is that the relevant market is indeed efficient and actively traded; if it were not, the market price would not necessarily reflect publicly available information. In their motion to dismiss, defendants contend that plaintiff failed to allege the efficiency of the market with the particularity mandated by Rule 9(b). The court disagrees.

Plaintiff alleges that "Chittenden's shares have traded on the public, efficient and national market known as NASDAQ National Market System." Complaint ¶ 7. The complaint further alleges that as a regulated issuer the bank filed periodic public reports and that trading volume during the class period comprised over two million shares. Complaint ¶ 14. These allegations satisfy Rule 9(b) particularity requirements. Whether Chittenden stock in fact traded in a market sufficiently well developed to support the presumption of reliance may remain an issue in this case, but it is not an issue that can be decided on a motion to dismiss. See *Cammer v. Bloom*, 711 F.Supp. 1264, 1277–80 (D.N.J. 1989) (claim that market was not sufficiently efficient to support plaintiffs' fraud on the market theory held not amenable to decision on motion to dismiss; summary judgment on issue denied because genuine issues concerning character of market remained in dispute); *Harman v. LyphoMed, Inc.*, 122 F.R.D. 522, 525–26 (N.D.Ill.1988) (efficient market for over-the-counter stock adequately alleged; "nothing in the theory

limits its application to stocks which trade on a particular exchange").

### C. *Pendent Claims*

Defendants have also moved to dismiss the pendent state law claims for lack of jurisdiction. In light of the court's refusal to dismiss the federal claims, pendent jurisdiction is properly asserted over the related state law claims. 28 U.S.C. § 1367.

For all the reasons stated above, defendants' motion to dismiss is DENIED. Additionally, defendants' motion for a temporary stay of discovery pending disposition of their motion to dismiss is DENIED.

## II. MOTION FOR SUMMARY JUDGMENT

 Defendants move for summary judgment on the ground that the statute of limitations expired prior to commencement of the action, which was filed on August 9, 1991. They argue that the applicable limitations period is one year, measured from the date that plaintiff, exercising reasonable diligence, should have discovered defendants' fraud, see *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, —— U.S. ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991), and that this date arrived long before August 9, 1990, in light of all the telltale indications of fraud as alleged in plaintiff's complaint.[6]

"Litigation instituted pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.* It appears unlikely that plaintiff knew or should have known of "the facts constituting the violation" until August 15 of 1990, when defendants finally announced an increase in the bank's loan loss reserve commensurate with the actual state of its loan portfolio. In any event, when plaintiff discovered or ought to have discovered the relevant facts in this case is a factual issue over which the parties are in vigorous dispute. Summary judgment is therefore not

---

**6.** The delicate tension between defendants' respective attitudes in their motion for summary judgment and their motion to dismiss did not, of course, escape plaintiff's counsel, who suggest that defendants have entered "the rabbit hole into Wonderland."

warranted. Fed.R.Civ.P. 56(c). The motion is DENIED.

## III. CLASS CERTIFICATION

Plaintiff moves for certification of a class of all persons who purchased Chittenden common stock during the period from March 29, 1989 through August 15, 1990, excluding the defendants, Chittenden's principals, and their families. On the first of those dates the bank filed its Form 10–K for fiscal year ending December 31, 1988; on the latter, the bank announced the $6.8 million special charge to earnings to allow for an increased provision to its allowance for loan losses and a higher reserve against losses on sales of real estate previously acquired through foreclosure. Plaintiff David Walsh purchased 100 shares of Chittenden common stock on March 6, 1990.

 Under Rule 23(a) of the Federal Rules of Civil Procedure, a party may sue as a representative of a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. In addition, the class action may proceed only if one of the conditions listed in Rule 23(b) is satisfied; here, plaintiff proposes to satisfy (b)(3): "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Several of the criteria for class certification are not disputed and are easily satisfied in this case. There are alleged to be hundreds of members of the class located throughout the country; there are obviously questions of law and fact common to the class; and it is evident that these questions (defendants' misrepresentations and omissions, scienter, fraud on the market, measure of damages) predominate and that a class action is the most fair and efficient method for adjudicating the controversy. Damages suffered by individual purchasers might be too small to make litigation on an individual basis cost-effective.

 Defendants contend, however, that plaintiff is unable to satisfy the typicality and adequacy of representation requirements of Rule 23(a)(3) and (a)(4). Essentially, defendants argue that plaintiff's claims are not typical because there is evidence that plaintiff, a shareholder of Chittenden since 1986, knew of and was concerned about potential losses due to bad real estate loans *prior to* his purchase of Chittenden stock in March of 1990, and that his claim of reliance upon the integrity of the market is thus subject to defenses that could not be raised against claims of other class members. See *Fisher v. Plessey Co. Ltd.*, 103 F.R.D. 150, 159 (S.D.N.Y. 1984) (typicality requirement assures "that class recovery is not imperiled by the existence of a defense uniquely available against the named representative"). For example, in its financial statement for the second quarter of 1989, received by plaintiff, the bank announced a $4.5 million increase in nonperforming assets since the end of the first quarter; on October 19th, it disclosed a further increase of $13.2 million in nonperforming assets from the end of the second quarter and added $5.3 million to its allowance for possible loan losses. The price of stock greatly declined during the year following these announcements. In his deposition, plaintiff testified that he had read an October 20th *Burlington Free Press* article on these developments and was "concerned." He further testified that when he purchased the 100 shares on March 6, 1990, he believed that the price of stock had "bottomed out."

Defendants conclude from these facts that plaintiff's claims and the bank's defenses are not typical of all class members, and that plaintiff could not adequately represent their claims. They argue that a presumption that plaintiff relied upon the bank's alleged misrepresentations or failures to disclose might be rebutted by the evidence that plaintiff in fact knew of the dismal state of the bank's loan portfolio.

The argument is unsuccessful. There is no suggestion that plaintiff had any inside nonpublic knowledge that would have led him to question the integrity of the market price of Chittenden stock, or that he would have purchased the stock even had he known of the undisclosed information. All of the knowledge defendants attribute to plaintiff is information from the *public* domain—knowledge that is therefore reflected in the market price, assuming an efficient, well developed market. Whatever his awareness of the public information about Chittenden's financial affairs, he was still entitled to rely on the company's public pronouncements—or on the integrity of the market which responds to those public pronouncements—when he purchased stock in March of 1990. And if, as alleged, the bank concealed material information or published material misrepresentations, thereby artificially inflating the price of its stock, plaintiff was defrauded in a manner like other purchasers during the relevant period and suffered the same type of loss, namely, being in possession of stock now priced below what he could fairly have predicted. In short, none of the facts advanced by defendants rebut the presumption of reliance.

*Kline v. Wolf*, 702 F.2d 400 (2d Cir.1983), relied upon by defendants, is distinguishable. In *Kline*, as here, the plaintiffs purchased stock from a corporation after it issued an annual report "which allegedly contained materially false overoptimistic statements" about the company's prospects; subsequently, the company filed for bankruptcy. *Id.* at 401. Plaintiffs then sued Price Waterhouse, which had certified the annual report, and several individual defendants. The complaint rested on two alternative theories: direct reliance upon the allegedly misleading statements, and reliance upon the integrity of the market. Plaintiffs' Rule 23 motion for class certification was denied by the trial court on the basis of testimony developed in discovery which raised serious questions as to the plaintiffs' credibility on the issue of direct reliance, rendering their claims subject to unique defenses. *Id.* Appealing from the denial of class certification, plaintiffs argued that their questionable testimony relating to their direct reliance on the annual report "should not preclude their representation of the class since this testimony was irrelevant to their alternate claim, which is based on a 'fraud on the market' theory." *Id.* at 403. The Circuit upheld the ruling:

> Since plaintiffs' testimony on an issue critical to one of their two causes of action was subject to sharp attack, the district court reasonably concluded that their credibility in general was sufficiently in doubt to justify denying them a fiduciary role as class representatives with respect to both claims. Moreover, even with respect to their "fraud on the market" claim their incredibility might support a rebuttal unavailable against many other class members, i.e., that plaintiffs did not significantly rely on the integrity of the market or that, even if they had known of the alleged misrepresentation, they would still have purchased the stock.

*Id.*

██ More relevant is *Harman v. LyphoMed, Inc.*, 122 F.R.D. 522 (N.D.Ill. 1988), where the court certified a class in a securities fraud case over the defendants' objection that the claims of one of the named plaintiffs were not typical. Shareholders of the defendant drug company brought suit alleging the company had defrauded the market by concealing results of a Food and Drug Administration investigation into its products. The court's discussion of the typicality requirement of Rule 23 is worth quoting at some length:

> The essence of the attack on Harman's [one of the named plaintiffs] claim is that she purchased stock even after she knew of LyphoMed's trouble with the FDA. Consequently, since she had the information defendants allegedly withheld, she cannot claim to have been duped by their alleged fraud on the market. Furthermore, since she knew the actual state of affairs, the alleged deceptions were not material to her. She therefore is subject to unique defenses which render her claim atypical.

**1054**

The facts do not support defendants' view. In July, 1987, the FDA cited LyphoMed for numerous violations. Defendants withheld this information, and in fact issued a quarterly report in August proclaiming the company's vigorous growth. Harman made her first purchase November 3, 1987. A week later, LyphoMed issued its next quarterly report. This report again withheld the facts regarding the FDA, and again described the company's considerable success. Harman made another purchase later the same month.

In December, LyphoMed issued a news release which admitted for the first time that the FDA had cited the company for regulatory violations. However, in that same news release, LyphoMed misrepresented the extent of the violations uncovered by the FDA. It downplayed the investigation, dismissing the infractions as "small" or "procedural." And in a newspaper article which appeared the same day, the chairman of LyphoMed stated that the company had "corrected these items."

Harman made her last purchase the next month. She testified repeatedly at deposition that she made the purchase because "I figured all the bad news is out, the company will correct the violations. I didn't know that in March [1988] they will come out with another report."... Seen in this light, her purchase in January was identical to her purchases in November.

*Id.* at 527–28. Harman's January purchase of LyphoMed stock is akin to plaintiff's March 1990 purchase of Chittenden stock. A trader's knowledge of public information that dampens a company's performance on the stock market does not by itself rebut the presumption of reliance on the integrity of the market.

Defendants also oppose class certification on the grounds that (1) plaintiff is subject to inherent conflicts of interest that prevent him from adequately representing the class as a fiduciary, (2) plaintiff is an inadequate representative because he does not comprehend the financial burden likely to be imposed by the litigation, (3) the class period is over-inclusive, and (4) class certification should be denied with respect to the pendent state law claims.

Defendants posit three types of conflict of interest. First, they argue that plaintiff's prior Chittenden holdings (800 shares purchased in 1986 and 1987) create a conflict of interest because a large judgment or settlement in this action could drive down the market price of Chittenden stock, causing plaintiff further losses on the prior holdings. This seems to the court entirely too speculative a basis (and unsupported by authority) for concluding that plaintiff will not represent the class adequately. Second, defendants argue that plaintiff's continued ownership of the 100 shares that are the subject of this lawsuit creates a conflict of interest with class members who no longer own Chittenden stock. This circumstance does not present a conflict of interest, however. *Herbst v. Int'l Tel. & Tel. Corp.*, 495 F.2d 1308, 1314 (2d Cir.1974). Even if plaintiff ultimately earns a profit on the shares he kept, he still may seek damages in this suit because the damages are measured by the difference between the price he paid for the 100 shares and the actual value of those shares at the time of purchase taking into account the withheld information. See *Bernstein v. Crazy Eddie, Inc.*, 702 F.Supp. 962, 980 (E.D.N.Y.1988), *vacated in part on other grounds*, 714 F.Supp. 1285 (E.D.N.Y.1989). Third, defendants argue that plaintiff's expectation that he will receive a fee for representing the class creates a conflict of interest. Whether or not plaintiff is indeed entitled to such compensation, his expectations about the matter hardly place him in a position where he cannot represent the interests of class members fully and adequately.

Defendants next contend that plaintiff is an inadequate representative because he does not understand the financial burden of this litigation, such as the costs of expert fees and notice to class members. Though plaintiff admitted in his deposition that he was unsure of the full extent of the costs he might incur, there is no indication

that he is unable or unwilling to fully litigate the case and pay necessary costs; this argument has no merit.

 Defendants then argue that the class period is overinclusive: the proper cutoff date, defendants insist, is March 6, 1990, the day plaintiff purchased the 100 shares, because plaintiff has no standing to prosecute claims based on any statements made after his own purchase. This is incorrect and illogical. There would be little sense in cutting off the class period on the day plaintiff happened to buy, since the thrust of plaintiff's action is that Chittenden's public statements over a period of time—until the August 15, 1990 disclosure—constituted a fraud on the market. A class representative has standing to represent all investors similarly defrauded by the alleged scheme, regardless of the representative's date of purchase. *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Shamberg v. Ahlstrom*, 111 F.R.D. 689, 696 (D.N.J.1986).

 Finally, defendants contend that plaintiff should not be certified to represent the class on the pendent state law claims, since these claims involve varying state common law standards of liability. The federal § 10(b) claims and the common law claims in the complaint, however, are predicated on the same factual allegations. Proof will be essentially the same. Even if the law of different states might ultimately govern the common law claims—an issue that need not and is not decided at this juncture—certification of the class for the whole action is appropriate. "[T]he spectre of having to apply different substantive law does not warrant refusing to certify a class on the common-law claims." *In re Lilco Securities Litigation*, 111 F.R.D. 663, 670 (E.D.N.Y.1986). The class is accordingly certified as to all counts.

Plaintiff's motion for class certification is GRANTED. The class is defined as follows:

> All persons and entities who purchased the common stock of Chittenden Corporation during the period March 29, 1989 through August 15, 1990 (inclusive). Excluded from the class are the defendants, members of the Boards of Directors of Chittenden and Chittenden Bank, the Executive Management Groups or Committees of Chittenden or Chittenden Bank and the members of their immediate families and any subsidiaries, affiliates or controlled person of any such person or entity.

It is further ORDERED that (1) defendants determine and provide to plaintiff the names and addresses of all class members to the extent they are reasonably available and (2) plaintiff and defendants jointly prepare a proposed form of notice to class members in compliance with Fed.R.Civ.P. 23(c)(2) and file the same with the court within 28 days of entry of this order. The court will thereafter approve, with or without hearing and modification, notice to be mailed to class members, or published as appropriate, at plaintiff's expense.

## CONCLUSION

Defendants' motion to dismiss (paper # 7 in the court's file), motion to stay discovery (paper # 11), and motion for summary judgment (paper # 28) are DENIED. Plaintiff's motion to certify class (paper # 3) is GRANTED and the parties are directed to comply with the notice procedure outlined above.