Linda UPTON, on behalf of herself and all others similarly situated, Plaintiff,

v.

George W. McKERROW, Jr., et al., Defendants.

Civ. A. No. 1:94–cv–0353–MHS.

United States District Court, N.D. Georgia, Atlanta Division.

March 30, 1995.

John E. Grasberger, phv, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Martin D. Chitwood, Appel, Chitwood & Harley, Atlanta, GA, for plaintiff.

Steven M. Collins, Mary C. Gill, Oscar N. Persons, John Allen Jordak, Jr., Alston & Bird, Atlanta, GA, for defendants, George W. McKerrow, Jr., Ronald P. Sheean, Ronald W. San Martin, J. William Norman, George W. McKerrow, Sr. and Longhorn Steaks, Inc.

Thomas Samuel Richey, William Scott Sorrels, John M. Gross, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, for defendants Robinson–Humphrey Co., Inc. and J.C. Bradford & Co.

### ORDER

SHOOB, Senior District Judge.

This action is before the Court on plaintiff's motion to certify a class action and on defendants' motions to dismiss. The Court's rulings are summarized below.

### BACKGROUND

Plaintiff has filed this action against defendants for alleged security fraud. Plaintiff seeks to certify a class consisting of all purchasers of the common stock of Longhorn Steaks, Inc. ("Longhorn") from July 27, 1992 through June 17, 1993, who sustained damages in connection therewith. The defendants are Longhorn, certain individual defendants who were officers and directors, and two underwriting firms. Plaintiff alleges that defendants violated § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 issued by the Securities and Exchange Commission ("SEC") and, with respect to the individual defendants, § 20(a) of the Exchange Act.

Plaintiff alleges that Longhorn's insiders and underwriters undertook to issue a series of false and misleading statements after mid-June 1992, when the company's stock had fallen to a low of $14.25 per share. Plaintiff alleges that after Longhorn went public on March 31, 1992, the officers signed new employment contracts in which they agreed to reduced cash compensation in exchange for options to purchase shares of Longhorn common stock, some at $17 and some at $19 per share. Plaintiff alleges that since the stock price had to exceed the option price for these options to have value, the insiders engaged in fraudulent actions to raise the price of the stock.

Plaintiff alleges that the value of Longhorn stock depended on the success of an ambitious expansion program, because the sales revenues of Longhorn's existing restaurants were essentially flat or showed very small growth. Plaintiff claims that defendants, in press releases, the 1992 Annual Report and Form 10–K, and a March 1993 prospectus, represented that Longhorn was aggressively opening new restaurants, stressed its careful site selection process and depth of management talent, and emphasized that its revenue growth came almost entirely from new restaurants. Plaintiff alleges that these statements included material misrepresentations and omissions.

Plaintiff alleges that initially defendant McKerrow, Jr., made certain misleading statements in the press releases which accompanied the announcements of Longhorn's results for the second quarter (July 27, 1992), for the third quarter, and for the fourth quarter (February 2, 1993), concerning expansion plans and the contribution to revenue growth by the new restaurants. The price of Longhorn stock subsequently rose and, in March 1993, Longhorn undertook a secondary public offering of 2.3 million shares at $18.25 per share. The five individual defendants offered and sold 1.05 million shares and Longhorn sold the remaining 1.25 million shares. Plaintiff alleges that the insiders and the underwriter defendants drafted a materially false and misleading prospectus, which made numerous misrepresentations about Longhorn's expansion program, its restaurant site selection procedures and its management training program. Plaintiff also alleges similar misrepresentations were contained in the 1992 Annual Report, the 1992 Form 10–K, an April 21, 1993 press release, and the Report to Shareholders issued in mid-May for the first quarter of 1993. Finally, plaintiff alleges that the results for

the first quarter of 1993 were materially inflated by improper capitalization of restaurant pre-opening costs for new restaurants and for restaurants opened in the previous six months that were consistently losing money, in violation of Generally Accepted Accounting Principles ("GAAP") and SEC regulations.

Plaintiff claims that the following specific statements, in conjunction with other statements that emphasized the expansion plans, were fraudulent:

1. "The majority of the company's revenue growth for the fourth quarter and the year came from new restaurants with incremental revenues from full-period operations at restaurants opened during the comparable period for the prior year." Feb. 2, 1993 Press Release.

2. "The site selection process focuses on trade area demographics, target population density and household income level as well as specific site characteristics, such as visibility, accessibility and traffic volume. The Company also reviews potential competition and the profitability of national chain restaurants operating in the area." March 1993 Prospectus.

3. "[T]he Company requires new managers to complete a nine to twelve week training program. The Course is designed to encompass all phases of restaurant operations, including the Company's philosophy, management strategy, policies, procedures and operating standards." March 1993 Prospectus.

4. "Management receives biweekly reports on daily sales, cash deposits, customer counts and purchases. In addition, inventory is taken twice a month and cost of sales calculations are compiled. Based on these various reports, management believes that it is able to closely monitor the Company's operations." March 1993 Prospectus.

5. "The Company's revenue growth came principally from opening new company-owned restaurants in 1992 and having full-year operations at restaurants opened during 1991." 1992 Annual Report.

6. "Longhorn Steaks has the human and financial resources to develop these restaurants. Perhaps more important, however, we devoted great attention in 1992 to building the management to oversee and operate the planned restaurants." 1992 Annual Report.

7. "The increase in total revenues for the first quarter was driven by growth at Company owned restaurants opened since October 1, 1991." Report to the Shareholders for the first quarter of 1993.

Then, on June 17, 1993, Longhorn announced that second quarter earnings would drop because of losses at new restaurants. The stock dropped accordingly. At this time, Longhorn stated that the revenues of some of its newer company-owned restaurants were lower than expected and food costs were higher than expected. Subsequently, Longhorn reported lower third quarter earnings. Longhorn stated that it was abandoning its expansion plans. Soon thereafter, plaintiff alleges, defendant McKerrow, Jr., then-president of Longhorn, stated that Longhorn had been selecting new restaurant sites without performing market study research, that new and inexperienced managers had contributed to its poor results, and that the new Florida restaurants were all losing money. Both defendant McKerrow, Jr. and defendant McKerrow, Sr. were relieved of their duties. The stock price ultimately reached a low of $6.25 per share, compared to a high during the class period of $25.25 per share.

## MOTIONS TO DISMISS

■ To state a claim for securities fraud under § 10(b) and Rule 10b–5, plaintiff must allege that defendants: (1) made a misstatement or omission (2) of a material fact (3) made with scienter (4) upon which plaintiff justifiably relied (5) that proximately caused plaintiff's damages. *Gochnauer v. A.G. Edwards & Sons, Inc.,* 810 F.2d 1042, 1046 (11th Cir.1987). In addition, Fed.R.Civ.P. 9(b) imposes certain pleading requirements for fraud claims, including security fraud claims.

### I. *Motion to Dismiss by Defendants Longhorn and Individual Defendants*

Defendant Longhorn and the individual defendants move to dismiss on the grounds

that: (1) the statements alleged to have been made by defendants are not actionable as a matter of law under the "bespeaks caution" doctrine; (2) the complaint fails to plead fraud with the particularity required by Rule 9(b); and (3) the named plaintiff lacks standing.

### A. *Legal Standard for Motion to Dismiss*

The only concern of the Court at this stage is whether, construing the complaint in the light most favorable to plaintiff, *Hargrave v. McKinney*, 413 F.2d 320 (5th Cir.1969), plaintiff will be able to prove a set of facts in support of his claims which would entitle him to relief. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). The complaint need not, and indeed should not, plead evidence. *In re Beef Antitrust Litigation*, 600 F.2d 1148 (5th Cir.1979), *cert. denied*, 449 U.S. 905, 101 S.Ct. 280, 66 L.Ed.2d 137 (1980). The Court must treat the allegations as true and draw all inferences in plaintiff's favor. *St. Joseph's Hospital, Inc. v. Hospital Corp. of America*, 795 F.2d 948, 954 (11th Cir. 1986). As the Supreme Court stated in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

### B. *Standing*

Defendants argue that the named plaintiff lacks standing to bring a Rule 10b–5 action based on any statements made after January 27, 1993, because the latest date on which she purchased Longhorn stock was on January 27, 1993. Thus, defendants argue, plaintiff cannot have relied on anything that occurred after her last purchase or sale.

■ Numerous courts have stated that class representatives do have standing to assert claims under § 10(b) which arise from statements made after the class representative purchased shares as long as the statements allegedly were made in furtherance of a common scheme to defraud. *Renz v. Schreiber*, 832 F.Supp. 766, 772 (D.N.J.1993); *Walsh v. Chittenden Corp.*, 798 F.Supp. 1043,

1055 (D.Ut.1992); *Robbins v. Moore Medical Corp.*, 788 F.Supp. 179, 187 (S.D.N.Y.1992); *Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598, 606 (N.D.Cal.1991). In this case, plaintiff alleges that defendants were engaged in a scheme to defraud by misrepresenting that the company was achieving revenue growth by the successful expansion of new company-owned stores, accomplished by means of careful site selection and training of new restaurant management. These statements allegedly began on July 27, 1992, and continued until mid-May of 1993. Therefore, the Court concludes that plaintiff does have standing to assert claims under § 10(b) which arise from statements made after she purchased shares because these statements were allegedly made in furtherance of a common scheme to defraud which began before plaintiff made her last purchase of Longhorn stock.

### C. *Requirements of Fed.R.Civ.P. 9(b)*

Defendants claim that plaintiff has not plead fraud with particularity as required by Fed.R.Civ.P. 9(b). Specifically, defendants claim that plaintiff has not plead facts that "provide a basis for strong inference of fraudulent intent," *Decker v. GlenFed, Inc. (In re GlenFed Inc. Sec. Litig.)*, 11 F.3d 843, 848 (9th Cir.1993). Defendants also argue that plaintiff has failed to plead how the statements are fraudulent or when defendants became aware of the information which plaintiff alleges was withheld and misrepresented.

■ After reviewing the complaint, the Court concludes that plaintiff has pleaded facts that provide a basis for a strong inference of fraudulent intent. Certainly the fall in stock price to below the option price, followed by a secondary public offering in which defendants offered their stock for a price in excess of the option price, is a sufficient basis to infer fraudulent intent. Furthermore, plaintiff has pleaded sufficient acts and transactions that could constitute fraud. Plaintiff has done more than compare financial reports between periods. She had pleaded both that the president of Longhorn "admitted" that new restaurants had been losing

money and that sites had been selected without market research. These statements could reasonably be interpreted to directly contradict the earlier representations. In addition, plaintiff pleads that the profitability of the new restaurants was fraudulently stated by means of improper capitalization of pre-opening costs. The Court concludes that all these alleged facts are sufficient to meet the requirements of Rule 9(b) concerning pleading fraud with particularity.

### D. *Failure to State a Claim Upon Which Relief May Be Granted*

■ Defendants argue that none of the allegedly fraudulent statements in the Prospectus, Form 10–K and 1992 Annual Report are actionable under the "bespeaks caution" doctrine. "[W]here an offering statement, such as a prospectus, accompanies statements of its future forecasts, projections and expectations with adequate cautionary language, those statements are not actionable as securities fraud." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). This rule is known as the "bespeaks caution" doctrine. In *Saltzberg v. TM Sterling/Austin Assocs.*, 45 F.3d 399 (11th Cir.1995), the Eleventh Circuit adopted the "bespeaks caution" doctrine as explained by the Third Circuit in *In re Trump*.

■ The Third Circuit stated in *In re Trump*:

At a minimum ... the securities fraud provisions ... require proof that the defendants made untrue or misleading statements or omissions of material fact. We have squarely held that opinions, predictions and other forward-looking statements are not *per se* inactionable ... Rather, such statements ... may be actionable misrepresentations if the speaker does not genuinely and reasonably believe them ... [However] a complaint cannot survive a motion to dismiss [if] ultimately it does not sufficiently allege that the defendants made a *material* misrepresentation ... [M]ateriality is a relative concept, so that a court must appraise a misrepresentation or omission in the complete context in which

the author conveys it ... We accordingly take into account not only the [misrepresentation or omission], but also other relevant statements contained in the prospectus.

*Id.* at 368–69 (cites omitted). Under the "bespeaks caution" doctrine, when alleged misrepresentations or omissions contained in forward-looking statements are "accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the 'total mix' of information the document provided investors. In other words, cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law." *Id.* at 371. "The application of bespeaks caution depends on the specific text of the ... communication at issue ... To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions." *Id.* at 371–72.

■ Defendants argue that certain cautionary statements included in the 1993 Prospectus, the 1992 Annual Report, and 1992 Form 10–K were substantive and tailored to the specific future projections challenged in this action. Specifically, defendants point to the 1993 Prospectus, which states:

The Company's ability to expand will depend on a number of factors, including the selection and availability of suitable locations, the hiring and training of sufficiently skilled management and personnel ... There can be no assurance that the Company will be able to open all its planned new restaurants or that, if opened, those restaurants can be operated profitably ... [B]ecause of the Company's relatively small restaurant base, an unsuccessful new restaurant could have a more significant adverse effect on the Company's results of operations than would be the case in a larger restaurant company ... [T]he results achieved to date by the Company's relatively small restaurant base may not be indicative of the results of a larger number of restaurants in a more geographically dispersed area.

Defendants also argue that no statement made in either the 1992 Form 10–K or 1992 Annual Report is actionable because any predictions contained therein were qualified by cautionary language specifically tailored to those predictions. Finally, defendants claim that plaintiff is really complaining only of mismanagement and that the Supreme Court has held that corporate mismanagement alone does not give rise to a claim under § 10(b). *Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 477, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977).

Plaintiff first responds that materiality is almost always a question of fact that is not appropriately determined on a motion to dismiss, especially where there was massive insider selling in advance of the disclosure of the adverse news. *See Basic, Inc. v. Levinson,* 485 U.S. 224, 240 n. 18, 108 S.Ct. 978, 988 n. 18, 99 L.Ed.2d 194 (1988) ("We recognize that ... profit making by insiders can serve as an indication of materiality"); *TSC Indus. Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976) (the issue of materiality is a mixed question of law and fact and not appropriately resolved on summary judgment unless "so obvious ... that reasonable minds cannot differ on the question of materiality"). Plaintiff argues that most of the alleged misrepresentations and omissions contained in her complaint are "simple, affirmative statements of existing fact," such as the site selection process, the contribution of new restaurants to revenue, the successful opening of new restaurants, the effectiveness of its training program, and the plans for the proceeds of the 1993 offering. Plaintiff also argues that, with respect to those alleged misstatements that are predictive in nature, the cautionary language was either too general or did not address conditions already in existence.

Construing the complaint in the light most favorable to plaintiff, the Court concludes that defendants have not demonstrated that it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. To the extent that plaintiff's complaint alleges misstate-

ments of existing facts, the "bespeaks caution" doctrine is inapplicable. Moreover, plaintiff's complaint has alleged misstatements in predictions which allegedly were based on misstatements of existing facts which were not addressed by any cautionary language in the documents. Thus, the "bespeaks caution" doctrine does not apply to these statements. However, to the extent that plaintiff has alleged misstatements about the quality of management, the Court concludes that these allegations do not give rise to a claim upon which relief may be granted.

Accordingly, the Court grants defendants' motion to dismiss as to all alleged misstatements concerning the training program and the quality of management. Furthermore, the Court grants defendants' motion to dismiss as to all alleged misstatements concerning the anticipated number of new openings because these predictions were specifically addressed by cautionary language in the documents. The Court, however, denies defendants' motion to dismiss as to all alleged misstatements concerning the success and contribution to revenue of those new restaurants already opened and the site selection process.

II. *Motion to Dismiss by Defendants J.C. Bradford & Co. and The Robinson–Humphrey Co., Inc.*

Defendants J.C. Bradford and the Robinson–Humphrey Co. move to dismiss on the grounds that: (1) plaintiff cannot, as a matter of law, state a claim against the underwriters for aiding and abetting or conspiracy; (2) plaintiff cannot, as a matter of law, state a claim against the underwriters because the drop in stock price did not occur until a public announcement of the expected results for the second quarter, with which the underwriters had no role or responsibility; (3) plaintiff has failed to plead fraud against the underwriters with particularity as required by Fed.R.Civ.P. 9(b); and (4) the alleged misstatements and omissions are not actionable as a matter of law under the "bespeaks caution" doctrine.[1]

---

1. The Court has previously addressed this claim with respect to defendant Longhorn and the indi-

vidual defendants. Therefore, with respect to plaintiff's claims against defendants J.C. Brad-

First, defendant underwriters argue that the Supreme Court, in *Central Bank of Denver v. First Interstate Bank,* —— U.S. ——, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), eliminated not only aiding and abetting liability under § 10(b) and Rule 10b–5, but also effectively eliminated conspiracy claims. The Supreme Court stated:

> The absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts. Any person or entity ... who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator.

*Id.* at ——, 114 S.Ct. at 1455. Moreover, four dissenting Justices stated, "[t]he Court's rationale would sweep away the decisions recognizing that a defendant may be found liable in a private action for conspiring to violate § 10(b) and Rule 10b–5." *Id.* at ——, n. 12, 114 S.Ct. at 1460, n. 12 (Stevens, J., dissenting). Thus, in accordance with *Central Bank,* the Court concludes that plaintiff's claims in this action for aiding and abetting and for conspiracy are not actionable as a matter of law.

Next, defendants argue that plaintiff's claim alleges a drop in stock price as a result of Longhorn's announcement of second quarter earnings and that defendant underwriters had no involvement in this announcement. Plaintiff responds that she is not alleging that the June disclosure related only to the second quarter results, but also to problems which existed in the first quarter and the previous year which were not disclosed and were actively misrepresented in the prospectus.

Construing the complaint in the light most favorable to plaintiff, the Court concludes that plaintiff has alleged facts which, if proved, would entitle her to relief. Plaintiff has alleged misrepresentations and omissions in the prospectus that, if true, would have artificially inflated the price of the stock at the time of the secondary stock offering.

Defendants also argue that plaintiff's primary claims of security fraud should be dismissed because plaintiff has not plead facts sufficient to provide a basis for an inference of fraudulent intent, as required by Fed. R.Civ.P. 9(b). Defendants argue that plaintiff has merely alleged that the underwriters agreed to participate in the alleged wrongdoing to obtain substantial fees and that this alleged motive would make a mockery of Rule 9(b) by effectively eliminating the scienter requirement as to securities underwriters.

In *Melder v. Morris,* 27 F.3d 1097, 1104 (5th Cir.1994), the Fifth Circuit affirmed the district court's dismissal of a securities fraud claim against defendant underwriters in part because plaintiff had failed to plead scienter adequately under Rule 9(b). The court stated that Rule 9(b) required that plaintiff sets forth specific facts supporting an inference of fraud. *Id.* The Court concluded that plaintiff's allegations that defendants engaged in a conspiracy to commit securities fraud so that they could collect substantial fees, expenses and discounts in connection with the offerings were insufficient. *Id.* The Court explained that accepting this allegation of motive would effectively eliminate the state of mind requirement as to securities underwriters since all underwriters are fee seekers. Moreover, the court stated, "[w]e have searched the plaintiffs' complaint for allegations of specific facts to support an inference of fraudulent intent, but have turned up nothing." *Id.* The Court found that the allegations in the complaint that the underwriters either obtained knowledge or recklessly disregarded the facts were insufficient. *Id.*

The Eleventh Circuit, however, in *McDonald v. Alan Bush Brokerage Co.,* 863 F.2d 809, 814 (11th Cir.1989), stated that

ford and The Robinson–Humphrey Co., the Court grants their motion to dismiss as to all alleged misstatements and omissions concerning the training program and the quality of management and all alleged misstatements and omissions concerning the anticipated number of new openings.

The Court, however, does not grant these defendants' motion to dismiss as to all alleged misstatements concerning the success and contribution to revenue of new restaurants already opened and the site selection process.

"the rule of this Circuit is that a showing of 'severe recklessness' satisfies the scienter requirement. 'Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.' " (cites omitted).

Plaintiff alleges that the underwriters, as part of their due diligence, purportedly reviewed the feasibility and marketing reports, the competitive analyses, site selection reports and bi-weekly sales and operations reports in existence at the time. Plaintiff alleges that, therefore, defendants either knew these reports were not being generated or that the new restaurants were not performing successfully. Plaintiff also alleges that, if defendant underwriters did not review these reports, they were extraordinarily reckless in making representations in the prospectus about the site selection process, the report generation and the success of the new restaurants. Plaintiff also alleges that this information was already in existence at the time of the prospectus and did not materialize within the short time between the March prospectus and the June press release.

Here, the Court concludes that plaintiff has alleged specific facts supporting an inference of fraud by the underwriters. The Court finds plaintiff's allegations that the underwriters had access to confidential reports during due diligence and therefore must have known or recklessly disregarded the facts are sufficient to meet the pleading requirements of scienter.

*Motion for Class Certification*

In light of the foregoing, upon consideration of plaintiff's motion for class certification and the memorandum in support thereof, and other documents pertaining thereto and the record therein, the Court grants plaintiff's motion for class certification in accordance with the following:

1. This action shall be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2. The class certified with respect to Counts I & II, (limited to all alleged misstatements and omissions concerning the success and contribution to revenue of newly opened restaurants and the site selection process) consists of all persons who, during the period from July 27, 1992 through and including June 17, 1993 ("the Class Period"), purchased the common stock of Longhorn Steaks, Inc. and who suffered damages thereby.

3. Excluded from the class are the defendants, members of their immediate families, officers and directors of Longhorn, any entity in which a defendant has a controlling interest and the legal representative, heirs, successors or assigns of any such excluded party.

4. Counsel for plaintiff are hereby designated as counsel to the class.

*CONCLUSION*

In summary, the Court GRANTS IN PART AND DENIES IN PART defendants' motions to dismiss [# 11, # 12] and GRANTS plaintiff's motion for class certification under the terms contained herein [# 9].

IT IS SO ORDERED.